# IN THE SUPREME COURT OF CALIFORNIA

DON L. MATHEWS et al.,
Plaintiffs and Appellants,

v.

XAVIER BECERRA, as Attorney General, etc., et al.,
Defendants and Respondents.

S240156

Second Appellate District, Division Two
B265990

Los Angeles County Superior Court
BC573135

---

December 26, 2019

Justice Liu authored the opinion of the Court, in which Justices Cuéllar, Kruger, and Groban concurred.

Chief Justice Cantil-Sakauye filed a dissenting opinion, in which Justices Chin and Corrigan concurred.

---

MATHEWS v. BECERRA

S240156

Opinion of the Court by Liu, J.

The Child Abuse and Neglect Reporting Act is a comprehensive statute designed to protect children from abuse and neglect. (Pen. Code, § 11164 et seq.; all undesignated statutory references are to this code.) The statute designates a list of "mandated reporters" who have an affirmative duty to make a report to law enforcement or an appropriate child protective agency "whenever the mandated reporter, in the mandated reporter's professional capacity or within the scope of the mandated reporter's employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect." (§ 11166, subd. (a); see § 11165.7.) Failure to fulfill this duty is a misdemeanor and may result in the suspension or revocation of a professional license. (§ 11166, subd. (c); Bus. & Prof. Code, § 4982, subd. (w).) Mandated reporters include psychiatrists, psychologists, marriage and family therapists, clinical social workers, professional clinical counselors, alcohol and drug counselors, and other health professionals. (§ 11165.7, subd. (a)(21), (38).)

The term " 'child abuse or neglect' " in the reporting statute includes "sexual abuse as defined in Section 11165.1." (§ 11165.6.) Section 11165.1, in turn, defines sexual abuse to include " 'sexual exploitation.' " (§ 11165.1, subd. (c).) In 2014, the Legislature expanded the definition of sexual exploitation in the reporting statute to cover any person who knowingly

1

"downloads," "streams," or electronically "accesses" child pornography. (§ 11165.1, subd. (c)(3), as amended by Stats. 2014, ch. 264, § 1 (hereafter section 11165.1(c)(3)).)

The plaintiffs in this case are two licensed marriage and family therapists and one certified alcohol and drug counselor with significant experience treating patients with sexual disorders, addictions, and compulsions. According to the complaint, plaintiffs' patients include many persons who, during the course of voluntary psychotherapy, have admitted to downloading or electronically viewing child pornography but who, in plaintiffs' professional judgment, do not present a serious risk of sexual contact with children. Plaintiffs contend that the basic norm of confidentiality protected by the psychotherapist-patient privilege applies to such admissions and that the 2014 amendment to section 11165.1(c)(3), which requires plaintiffs to report such patients to law enforcement and child welfare authorities, violates their patients' right to privacy under article I, section 1 of the California Constitution and the Fourteenth Amendment of the United States Constitution. The Attorney General and the Los Angeles County District Attorney (collectively, defendants) filed demurrers, contending that plaintiffs had failed to establish a valid privacy claim under either the state or the federal Constitution. The trial court dismissed the complaint, and the Court of Appeal affirmed.

As the parties and all members of this court agree, the proliferation of child pornography on the Internet is an urgent problem of national and international dimension. By some estimates, there were reports of over 45 million online photos and videos depicting child pornography in 2018 alone, which represents a greater than 45-fold increase over the past decade.

(Keller & Dance, *The Internet Is Overrun With Images of Child Sexual Abuse. What Went Wrong?*, N.Y. Times (Sept. 28, 2019); see *Paroline v. United States* (2014) 572 U.S. 434, 440 (*Paroline*) ["Because child pornography is now traded with ease on the Internet, 'the number of still images and videos memorializing the sexual assault and other sexual exploitation of children, many very young in age, has grown exponentially.' "].) Technology has amplified the devastating nature and magnitude of child pornography, resulting in harms to children that are incalculably severe and enduring. (*In re Grant* (2014) 58 Cal.4th 469, 477–478 (*Grant*).)

Culpability for this abuse lies not only with the producers of child pornography but also with its consumers, who drive demand and perpetuate the victimization with every viewing. (See *Grant*, *supra*, 58 Cal.4th at pp. 477–478; *Paroline*, *supra*, 572 U.S. at pp. 440–441, 457.) In California, knowing possession or control of child pornography is a crime (§ 311.11), and such conduct itself implicates no cognizable privacy interest. The narrow question here is whether mandatory reporting of patients who admit to possessing or viewing child pornography in the course of voluntary psychotherapy to treat sexual disorders implicates a cognizable privacy interest.

The posture in which this question arises is crucial to its resolution: This case is before us on demurrer, which means the parties have not yet introduced any evidence bearing on the question presented. " ' "When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." ' " (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010 (*Centinela*).) In making this determination,

we must accept the facts pleaded as true and give the complaint a reasonable interpretation. (*Ibid.*)

Applying this standard of review, we hold that plaintiffs have asserted a cognizable privacy interest under the California Constitution and that their complaint survives demurrer. Our holding does not mean the reporting requirement is unconstitutional; it means only that the burden shifts to the state to demonstrate a sufficient justification for the incursion on privacy as this case moves forward. We reverse the Court of Appeal's judgment and remand for further proceedings to determine whether the statute's purpose of protecting children is actually advanced by mandatory reporting of psychotherapy patients who admit to possessing or viewing child pornography.

Our dissenting colleagues assert that "plaintiffs are unlikely to establish on remand that Assembly Bill 1775 does not substantively further its intended purpose." (Dis. opn., *post*, at p. 21.) To be sure, surviving demurrer is no assurance of success on the merits once evidence is developed and considered. But we see no basis to prejudge what the evidence will show. In the absence of an evidentiary record, we express no view on the ultimate validity of the 2014 amendment to section 11165.1(c)(3) or plaintiffs' likelihood of success.

To be clear, the privacy interest we recognize here attaches to a patient's disclosures during voluntary psychotherapy, not to the patient's underlying conduct. There is no right to privacy that protects knowing possession or viewing of child pornography online or through any other medium. Further, we do not hold that patients' communications with their therapists are protected when the therapist believes the patient has committed hands-on sexual abuse or poses a

threat of doing so. All statutory exceptions to the psychotherapist-patient privilege, including the dangerous patient exception (Evid. Code, § 1024), still apply. Finally, because plaintiffs may proceed on their state constitutional claim, we have no need to reach plaintiffs' privacy claim under the federal Constitution.

## I.

The reporting statute was originally enacted in 1980 as the Child Abuse Reporting Act. (Stats. 1980, ch. 1071, §§ 1–5.) In 1987, the Legislature renamed it the Child Abuse and Neglect Reporting Act (CANRA). (Stats. 1987, ch. 1459.) As noted, CANRA requires mandated reporters to report incidents of suspected "child abuse or neglect" (§ 11166, subd. (a)), a term that includes "sexual abuse" (§ 11165.6), which in turn includes " 'sexual exploitation' " (§ 11165.1(c)). From 1987 to 2014, CANRA defined "sexual exploitation" to apply to "[a]ny person who depicts a child in, or who knowingly develops, duplicates, prints, or exchanges, any film, photograph, video tape, negative, or slide in which a child is engaged in an act of obscene sexual conduct," with exceptions for law enforcement and other persons not relevant here. (Former § 11165.1, subd. (c)(3), as enacted by Stats. 1987, ch. 1459, § 5, p. 5518.)

In 2014, the Legislature passed Assembly Bill No. 1775 (2013–2014 Reg. Sess.) (Assembly Bill 1775), which expanded CANRA's definition of " 'sexual exploitation' " so that it now applies to "[a] person who depicts a child in, or who knowingly develops, duplicates, prints, *downloads*, *streams*, *accesses through any electronic or digital media*, or exchanges, a film, photograph, videotape, *video recording*, negative, or slide in which a child is engaged in an act of obscene sexual conduct,"

with the same exceptions as before. (§ 11165.1(c)(3), italics added.) According to a Senate Bill analysis, "[t]he purpose of [Assembly Bill 1775] is to update the definition of 'sexual exploitation' in the mandated child abuse reporting law with respect to visual depictions of children in obscene sexual conduct to reflect modern technology . . . ." (Sen. Com. on Public Safety, Child Abuse: Mandatory Reporting, Rep. on Assem. Bill No. 1775 (2013–2014 Reg. Sess.) as amended May 13, 2014, p. 1 (Senate Committee Report).)

One month after Assembly Bill 1775 took effect, plaintiffs Don Mathews, Michael Alvarez, and William Owen filed a complaint alleging that the amendment violates their patients' right to privacy under the state and federal Constitutions. Mathews, a licensed family and marriage therapist, is the founder and director of the Impulse Treatment Center in Walnut Creek, which, according to the complaint, is the largest outpatient treatment center for sexual compulsion or addiction in the United States. Alvarez, also a licensed family and marriage therapist, is a private practitioner specializing in treatment of addictions, including sex addiction, and was the founding director of the sexual disorders program at Del Amo Hospital in Torrance. Owen, a certified alcohol and drug counselor, has worked with sex addicts for the past 15 years in private practice and at Del Amo Hospital.

According to the complaint, plaintiffs "have treated numerous patients who are seeking treatment for sex addiction, sexual compulsivity, and other sexual disorders, many of whom have admitted downloading and viewing child pornography on the Internet, but whom [plaintiffs], based on their considerable training and experience, do not believe present a serious danger of engaging in 'hands-on' sexual abuse or exploitation of children

or the distribution of child pornography to others. These patients typically have no prior criminal history, have never expressed a sexual preference for children, and are active and voluntary participants in psychotherapy to treat their particular sexual disorder, which often involves compulsive viewing of pornography of all kinds on the Internet." Plaintiffs "have also treated patients seeking treatment because of sexual disorders involving a sexual attraction to children (including pedophilia), who have admitted to downloading and viewing child pornography, but whom [plaintiffs], based on their training and experience, do not believe present a serious danger of engaging in 'hands-on' sexual abuse or exploitation of children or the active distribution of child pornography to others. These patients typically have no prior criminal record . . . , no access to children in their home or employment, no history of 'hands-on' sexual abuse or exploitation of children, and often express disgust and shame about their sexual attraction to children for which they are actively and voluntarily seeking psychotherapy treatment." Plaintiffs contend that Assembly Bill 1775 requires them to report these patients in violation of the patients' constitutional right to privacy.

The complaint further alleges that statements made to psychotherapists during treatment are confidential and privileged, and that such confidentiality is an essential prerequisite for patients to seek and succeed in treatment: "[O]nce current patients who have admitted downloading or viewing child pornography during therapy learn that CANRA now requires Plaintiffs . . . or other psychotherapists to report such activity to law enforcement authorities for investigation, they will either cease therapy because Plaintiffs have exposed them to criminal prosecution and public disgrace or, if they

continue, are unlikely to continue providing the full disclosure of intimate details that Plaintiffs need to provide effective therapy. Similarly, persons who are seeking psychotherapy for serious sexual disorders may refuse such therapy once Plaintiffs inform them during intake screening that they are required to report any viewing of child pornography or, if the persons have already described such child pornography viewing as a reason for seeking treatment, that Plaintiffs are now obligated to report them before any therapy even begins. [Citations.] Enforcement of A.B. 1775 will also deter existing or potential patients who have serious sexual disorders — including sexual attraction to children — from obtaining needed psychotherapy, despite the lack of any evidence that they have engaged in 'hands-on' or 'contact' sexual abuse of children."

Plaintiffs further contend that CANRA now captures conduct that "does not fall within any reasonable definition of child sexual abuse," such as "minors who view sexually explicit self-portraits sent to them by other minors over cell phone networks," otherwise known as "sexting." In sum, plaintiffs allege that requiring therapists to report their patients for possessing or viewing child pornography fails to "further CANRA's salutary purpose of identifying and protecting children in California who are being abused by others."

In response, the Attorney General and the Los Angeles County District Attorney filed separate demurrers, contending that plaintiffs failed to assert a valid privacy claim under the state or federal Constitution.

Following a hearing, the trial court sustained the demurrers without leave to amend and dismissed the action with prejudice. The court held that Assembly Bill 1775 does not

violate the right to privacy under the California Constitution because there is neither a fundamental privacy right to possess or view child pornography nor a reasonable expectation of absolute privacy in psychotherapeutic treatment or in discussing illegal conduct with a therapist, and the mandated reports do not amount to a serious invasion of privacy in any event. The court also held that Assembly Bill 1775 does not violate the Fourteenth Amendment because there is no federal constitutional right to informational privacy and because, even if there were such a right, the applicable test would be rational basis review and Assembly Bill 1775 would pass muster.

The Court of Appeal affirmed. (*Mathews v. Becerra* (2017) 7 Cal.App.5th 334 (*Mathews*).) Applying the framework we outlined in *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1 (*Hill*), the court concluded that plaintiffs failed to meet the threshold requirements for stating a valid privacy claim under the California Constitution. The court determined that patients have no legally protected privacy interest in possessing child pornography or "in communicating that they have downloaded, streamed or accessed child pornography from the Internet." (*Mathews*, at p. 358.) The court further asserted that there is no reasonable expectation of privacy in communicating illegal conduct to psychotherapists, as such conduct is not entitled to constitutional protection. (*Id.* at p. 359.) The same was true for minors engaged in consensual sexting, the court explained, because "minors do not have a fundamental right to produce or possess child pornography, including viewing sexually explicit images of other minors." (*Id.* at p. 358.) The court then concluded that even if plaintiffs had satisfied the threshold elements to state a valid privacy claim, the invasion of privacy resulting from mandated reporting was justified

because it substantially furthered the state's " 'legitimate and important competing interest[]' " in "protecti[ng] . . . children from sexual exploitation on the Internet." (*Id.* at p. 366.) Finally, the Court of Appeal agreed with the trial court that there is no general right to informational privacy under the federal Constitution and that even if such a right existed, rational basis review would apply and Assembly Bill 1775 would easily survive. (*Id.* at pp. 367–368.)

We granted review.

## II.

At the outset, we clarify the scope of plaintiffs' challenge in three ways.

First, plaintiffs challenge CANRA only to the extent it requires mandatory reporting of patients suspected of simple possession or viewing of child pornography online or through other electronic or digital media. The parties agree that such conduct is encompassed by the terms "downloads," "streams," and "accesses through any electronic or digital media" added to section 11165.1(c)(3) in 2014. Legislative history shows that the reporting statute did not previously cover simple possession or viewing of child pornography, even though knowing possession or control of child pornography has been a crime in California since 1989.

As noted, the Legislature enacted section 11165.1(c)(3) in 1987 and originally defined " 'sexual exploitation' " to apply to any person who "knowingly develops, duplicates, prints, or exchanges" any image of child pornography. (Former § 11165.1, subd. (c)(3).) This definition came from a 1984 statute (Stats. 1984, ch. 1613, § 2, subd. (b)(2)(C), p. 5719) enacted "to bring California's child abuse reporting law into compliance with

recent changes in the federal Child Abuse Prevention and Treatment [and Adoption Reform Act of 1978, Pub.L. No. 95-266 (Apr. 24, 1978) 92 Stat. 204]" (Assem. Conc. Sen. Amends. to Assem. Bill No. 2709 (1983–1984 Reg. Sess.) as amended Aug. 28, 1984, p. 2). Federal regulations required states, as a condition of receiving federal aid for programs addressing child abuse and neglect, to have or enact mandatory reporting laws that cover " 'sexual exploitation,' " defined to "include[] . . . allowing, permitting, encouraging or engaging in the obscene or pornographic photographing, filming, or depicting of a child for commercial purposes as those acts are defined by State law." (45 Fed.Reg. 35796 (May 27, 1980) [proposed rule implementing 45 C.F.R. §§ 1340.2, 1340.13(a)(1)]; see also 48 Fed.Reg. 3698–3699 (Jan. 26, 1983) [final rule].)

The 1984 statute, in turn, borrowed the definition of "sexual exploitation" from a 1981 statute that made sexual exploitation an offense under Penal Code section 311.3. (Stats. 1981, ch. 1056, § 1, p. 4080.) The history of the 1981 statute indicates that "sexual exploitation" covered the production and distribution of child pornography, but not simple possession or viewing. (Deputy Atty. Gen. Raye, Sponsor of Sen. Bill. No. 331 (1981–1982 Reg. Sess.), letter to Sen. Stern, Apr. 3, 1981; Judicial Council of Cal., Rep. on Sen. Bill No. 331 (1981–1982 Reg. Sess.) Aug. 13, 1981, p. 2.) In 1989, the Legislature enacted a separate statute criminalizing the knowing possession or control of child pornography. (§ 311.11, added by Stats. 1989, ch. 1180, § 2, p. 4568.) But between 1989 and 2014, despite making other amendments to section 11165.1(c)(3), the Legislature did not alter the reporting statute to include simple possession or viewing of child pornography within the ambit of

reportable offenses.  (See Stats. 2000, ch. 287, § 21; Stats. 1997, ch. 83, § 1.)

Against this backdrop, the Legislature in 2014 amended CANRA's definition of " 'sexual exploitation' " so that it now applies to any person who "downloads" or "streams" child pornography or "accesses [it] through any electronic or digital media." (§ 11165.1(c)(3).)  These terms encompass a wide range of conduct, from viewing a video online to saving a copy of a file available on the Internet to transferring a file from a memory cloud to a computer hard drive.

We focus our attention on simple possession or viewing of child pornography online or through other electronic or digital media — conduct that forms the basis of plaintiffs' challenge. The parties agree that such conduct is covered by the terms added by the 2014 amendment, and we find that this conduct was not previously covered by section 11165.1(c)(3).  Although there is some legislative history asserting that the 2014 amendment was a mere technical update to CANRA (Senate Committee Report, at p. 2), the presumption that " ' "the Legislature intends to change the meaning of a law when it alters the statutory language" ' " (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 715) is borne out by the fact that the Legislature did not make possession or viewing of child pornography reportable when it enacted CANRA in 1987 and, despite making possession of child pornography a crime in 1989, did not amend the statute to cover such conduct for 25 years thereafter. Moreover, "whatever the Legislature may have believed about [CANRA's] applicability to [possession or viewing of child pornography] when it enacted [the 2014 amendment] cannot dictate the proper construction of [CANRA] as it stood" before that amendment. (*Coker v. JPMorgan Chase Bank, N.A.* (2016)

62 Cal.4th 667, 689–690; see *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244 ["[A] legislative declaration of an existing statute's meaning is neither binding nor conclusive in construing the statute. Ultimately, the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts."].)

Second, the parties do not agree on whether plaintiffs' suit is properly viewed as a facial or an as-applied challenge to the reporting requirement added by the 2014 amendment. Defendants contend that the suit is a facial challenge, whereas plaintiffs argue that the suit presents facial and as-applied challenges. The Court of Appeal concluded that plaintiffs have presented " 'only a facial challenge' " because they "seek 'only to enjoin *any* enforcement of the [amendment] and did not demonstrate a pattern of unconstitutional enforcement.' " (*Mathews*, *supra*, 7 Cal.App.5th at p. 350.)

We conclude that plaintiffs' suit "has characteristics of both: The claim is 'as applied' in the sense that it does not seek to strike [the 2014 amendment] in all its applications, but only to the extent it covers" psychotherapists who treat persons who have possessed or viewed child pornography but present no serious danger of hands-on sexual abuse or exploitation of children. (*Doe v. Reed* (2010) 561 U.S. 186, 194.) "The claim is 'facial' in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all" psychotherapists who treat such patients. (*Ibid.*) "The label is not what matters." (*Ibid.*) Plaintiffs' claims and requested relief "reach beyond the particular circumstances of these plaintiffs" and "must therefore satisfy [the] standards for a facial challenge to the extent of that reach." (*Ibid.*)

Third, we decline to address plaintiffs' claim that the 2014 amendment violates the privacy rights of minors who engage in consensual sexting (e.g., sending sexually explicit images or videos by smartphone). The complaint does not allege that any of the plaintiffs treat minors who engage in consensual sexting or that any of the plaintiffs, in their roles as therapists and counselors, anticipate having to report such minors. We therefore express no view on the constitutionality of the 2014 amendment as applied to consensual sexting by minors.

## III.

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162 (*Novartis*).) " ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed.' . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." ' " (*Centinela, supra,* 1 Cal.5th at p. 1010, citations omitted.)

We begin with plaintiffs' state constitutional claim. Unlike the federal Constitution, the California Constitution expressly recognizes a right to privacy: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." (Cal. Const., art. I, § 1; see *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 326 (*American Academy of Pediatrics*) (plur. opn. of

George, C.J.) ["[I]n many contexts, the scope and application of the state constitutional right of privacy is broader and more protective of privacy than the federal constitutional right of privacy as interpreted by the federal courts."].)  The word "privacy" was added to the state Constitution by a 1972 ballot initiative.  (*Lewis v. Superior Court* (2017) 3 Cal.5th 561, 569 (*Lewis*).)  The ballot materials urging adoption of the initiative stated:  " 'The right of privacy is the right to be left alone.  It is a fundamental and compelling interest.  It protects our homes, our families, our thoughts, our emotions, our expressions, our personalities, our freedom of communion and our freedom to associate with the people we choose. . . .  [¶]  *Fundamental to our privacy is the ability to control circulation of personal information.' "*  (*White v. Davis* (1975) 13 Cal.3d 757, 774 [quoting proponents' statement in 1972 election brochure].)  The inclusion of privacy among the inalienable rights recognized by our state Constitution " '*creates a legal and enforceable right of privacy for every Californian.' "*  (*Ibid.*)

In *Hill*, *supra*, 7 Cal.4th 1, we set forth a framework for analyzing constitutional privacy claims.  "[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following:  (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy. . . .  [¶] . . . .  [¶] A defendant may prevail in a state constitutional privacy case by negating any of the three elements just discussed or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests.  The plaintiff, in turn, may rebut a defendant's assertion of countervailing interests by showing

there are feasible and effective alternatives to defendant's conduct which have a lesser impact on privacy interests." (*Id.* at pp. 39–40.) The standard for evaluating the justification for a privacy invasion depends on "the specific kind of privacy interest involved and the nature and seriousness of the invasion and any countervailing interests." (*Id.* at p. 34.) "Where the case involves an obvious invasion of an interest fundamental to personal autonomy, . . . a 'compelling interest' must be present to overcome the vital privacy interest. If, in contrast, the privacy interest is less central, or in bona fide dispute, general balancing tests are employed." (*Ibid.*)

## A.

We first examine whether plaintiffs have established a legally protected privacy interest. In distinguishing this inquiry from the second threshold element (whether there is a reasonable expectation of privacy in the circumstances), we find *Hill* instructive. There, university student athletes challenged the National Collegiate Athletic Association's (NCAA) drug testing program, which required disclosure of medical information and observation of athletes while they gave urine samples. (*Hill, supra,* 7 Cal.4th at pp. 11–13.) In concluding that "the NCAA's drug testing program impacts legally protected privacy interests" (*id.* at p. 40), *Hill* said that the "program intrudes on a human bodily function that by law and social custom is generally performed in private and without observers" (*id.* at pp. 40–41), and that "information about the internal medical state of an athlete's body . . . is regarded as personal and confidential" (*id.* at p. 41). Then, proceeding to the second threshold element, we examined whether student athletes had a reasonable expectation of privacy in urination and in information about their bodily condition "within the

16

context of intercollegiate athletic activity and the normal conditions under which it is undertaken" (*ibid.*), and we concluded that their expectation of privacy is "diminished" in that setting but "not thereby rendered de minimis" (*id.* at p. 43). The first threshold element thus examines the basic nature of the privacy interest at a general level, while the second element asks whether an expectation of privacy is reasonable in the particular setting or context at issue.

Applying this approach, we conclude that section 11165.1(c)(3) impinges on a legally protected privacy interest. "In California, as in all other states, statements made by a patient to a psychotherapist during therapy are generally treated as confidential and enjoy the protection of a psychotherapist-patient privilege." (*People v. Gonzales* (2013) 56 Cal.4th 353, 371 (*Gonzales*); see *Jaffee v. Redmond* (1996) 518 U.S. 1, 12 (*Jaffee*) ["all 50 States and the District of Columbia have enacted into law some form of psychotherapist privilege"].) For more than 50 years, this privilege has been protected by statute in California. (Evid. Code, § 1014 [recognizing a patient's "privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist"]; see *id.*, § 1014, subd. (c) [the patient's privilege may be claimed by "[t]he person who was the psychotherapist at the time of the confidential communication"]; *Gonzales*, at pp. 371–372 [discussing history of the privilege].) In addition, "[t]he psychotherapist-patient privilege has been recognized as an aspect of the patient's constitutional right to privacy. (Cal. Const. art. I, § 1; [citations].)" (*People v. Stritzinger* (1983) 34 Cal.3d 505, 511 (*Stritzinger*); see *People v. Hammon* (1997) 15 Cal.4th 1117, 1127.)

The Law Revision Commission's comment on Evidence Code section 1014 explains the scope and purpose of the privilege: "Psychoanalysis and psychotherapy are dependent upon the fullest revelation of the most intimate and embarrassing details of the patient's life. . . . Unless a patient or research subject is assured that such information can and will be held in utmost confidence, he will be reluctant to make the full disclosure upon which diagnosis and treatment or complete and accurate research depends." (Cal. Law Revision Com. com., reprinted at Deering's Ann. Evid. Code (2004 ed.) foll. § 1014, p. 217.) Similarly, this court "ha[s] recognized the contemporary value of the psychiatric profession, and its potential for the relief of emotional disturbances and of the inevitable tensions produced in our modern, complex society. [Citations.] That value is bottomed on a confidential relationship; but the doctor can be of assistance only if the patient may freely relate his thoughts and actions, his fears and fantasies, his strengths and weaknesses, in a completely uninhibited manner." (*Stritzinger*, *supra*, 34 Cal.3d at p. 514.) We recently observed that where "a private individual voluntarily and confidentially seeks treatment from a psychotherapist[,] . . . the fact that treatment has been sought may itself be considered confidential information." (*Gonzales*, *supra*, 56 Cal.4th at p. 375, fn. 7.)

The Evidence Code contains various exceptions that limit the applicability of the psychotherapist-patient privilege. (Evid. Code, §§ 1016–1027.) "[F]or reasons of policy," such exceptions must be "construe[d] narrowly," and the privilege must be "broadly construed in favor of the patient." (*Stritzinger*, *supra*, 34 Cal.3d at pp. 511, 513.) In *Stritzinger*, the defendant was convicted of molesting his stepdaughter, Sarah, based on testimony provided by a clinical psychologist, Dr. Walker. In a

counseling session with Dr. Walker, Sarah had revealed sexual activity with her stepfather. (*Id.* at p. 509.) The next day, Dr. Walker met with the defendant, who made statements confirming the incidents that Sarah had revealed to Dr. Walker. (*Ibid.*) We held that Sarah's statements to Dr. Walker "were not privileged because Evidence Code 1027 provides an exception when, as here, the patient is under 16 years of age and the psychotherapist has 'reason to believe that the patient has been the victim of a crime and that disclosure of the communication is in the best interest of the child.' " (*Id.* at p. 513.) But we further held that the defendant's communications with Dr. Walker were "redundant" and, for that reason, did not fall within the child abuse reporting exception to the psychotherapist-patient privilege. (*Id.* at p. 514; see *ibid.* ["In this case, Dr. Walker reported his suspicion of child abuse following his consultation with Sarah . . . . He was not then required to make a second report of the same incidents, based on defendant's subsequent redundant communications."].) In adopting this narrow construction of the child abuse reporting exception, we said, "[I]t is impossible to conceive of any meaningful therapy" if the patient is aware "at the outset that [the psychotherapist] will violate his confidence and will inform law enforcement of their discussions." (*Ibid.*)

The District Attorney suggests that the privacy interest here is undercut by the exceptions for circumstances where the services of a psychotherapist are sought to aid commission of a crime or to escape detection (Evid. Code, § 1018) and for situations where "[t]he psychotherapist has reasonable cause to believe that [a] patient [under age 16] has been the victim of a crime and that disclosure . . . is in the best interest of the child" (*id.*, § 1027, subd. (b)). But plaintiffs do not allege their patients

are children under age 16 who are victims of crimes. And there is no basis to infer that plaintiffs' patients have sought psychotherapy in order to aid criminal conduct or to escape detection. According to the complaint, the patients "are active and voluntary participants in psychotherapy to treat their particular sexual disorder."

In addition, the Attorney General and the District Attorney contend that the dangerous patient exception means plaintiffs' patients have no cognizable privacy interest. (See Evid. Code, § 1024 ["There is no [psychotherapist-patient] privilege . . . if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger."].) Our case law has recognized that downloading, streaming, or accessing child pornography is harmful conduct. (See *Grant, supra*, 58 Cal.4th at pp. 477–478, 480.) But no court has held that patients who have admitted to downloading or viewing child pornography categorically fall within the ambit of Evidence Code section 1024.

Indeed, the statute does not authorize courts to determine what kinds of patients are dangerous. By the statute's plain terms, it is up to "the psychotherapist" to make that determination for each patient. (Evid. Code, § 1024.) In *Gonzales*, we rejected the contention that a trial court could review a defendant's psychological evaluations and independently find probable cause to believe the defendant is dangerous to himself or others within the meaning of Evidence Code section 1024. (See *Gonzales, supra*, 56 Cal.4th at pp. 379–382.) We explained that the exception "come[s] into play only

when *the therapist* has reasonable cause to believe and actually believes that the patient is dangerous." (*Id.* at p. 380, fn. 12, italics added; see *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 431 (*Tarasoff*) ["When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger."].) In this case, plaintiffs' complaint makes clear that they do not believe the patients whose privacy is at issue pose "a serious danger" (*Tarasoff*, at p. 431) to themselves or to others.

The dissent says our approach would extend privacy protection to a patient who "discloses to his psychotherapist that he recently logged into a live-streaming platform to watch a man sexually assault a six-year-old boy." (Dis. opn., *post*, at p. 21.) This example is drawn from a newspaper report of a group of men who live-streamed the sexual assault of a six-year-old boy, encouraged and gave directions to the perpetrator during the assault, cheered and masturbated for each other to see, and broadcast other prerecorded child pornography over the live-streaming platform. (*Ibid.*, citing Keller & Dance, *Child Abusers Run Rampant as Tech Companies Look the Other Way*, N.Y. Times (Nov. 9, 2019).) Unlike the patients described in plaintiffs' complaint, the men in this horrific example appear to have been actively involved in the sexual assault of a child. As a general rule, someone who describes being actively involved in hands-on abuse is a person who is a danger to others (Evid. Code, § 1024), and such a communication is therefore reportable. (See *Tarasoff, supra*, 17 Cal.3d at p. 431.) Here, the question presented concerns the mandatory reporting of

patients not believed to pose a serious danger of either hands-on abuse or active distribution of child pornography.

In sum, the narrow exceptions to the psychotherapist-patient privilege do not apply here. Because they do not apply, the general rule of confidentiality governs. Plaintiffs' patients have a legally protected privacy interest in their communications during voluntary psychotherapy.

**B.**

We next ask whether plaintiffs' patients have a reasonable expectation of privacy in the circumstances. Based on the allegations in the complaint, we conclude that the patients have such an expectation.

Here the psychotherapist-patient communications involve revelations of criminal conduct. (§ 311.11.) The Court of Appeal emphasized, and we agree, that "possession of Internet child pornography does not involve any 'vital privacy interest.' " (*Mathews*, *supra*, 7 Cal.App.5th at p. 354, quoting *People v. Luera* (2001) 86 Cal.App.4th 513, 522.) But plaintiffs do not contend that possessing or viewing child pornography *itself* implicates a privacy interest. They contend that privacy interests arise when their patients admit to possessing or viewing child pornography in the context of voluntary psychotherapy to treat sexual disorders.

The Court of Appeal held that there can be no reasonable expectation of privacy in information subject to mandatory reporting under CANRA (§ 11171.2, subd. (b)) because the Legislature has made an exception to the psychotherapist-patient privilege for such information. (*Mathews*, *supra*, 7 Cal.App.5th at p. 357.) The Attorney General echoes this assertion, arguing that although "the precise statutory

definition of reportable abuse and neglect has varied over time," "the fact remains that information suggesting conduct that harms children—including certain acts of obtaining child pornography—has been reportable and expressly exempted from the psychotherapist-patient privilege for thirty years." "Against that legal and cultural backdrop," he contends, patients have no reasonable expectation of privacy when they reveal in psychotherapy that they have downloaded or viewed child pornography.

This court considered and rejected a similar argument in *American Academy of Pediatrics*, *supra*, 16 Cal.4th 307, which held that a state law requiring minors to secure parental consent or judicial authorization before obtaining an abortion violated the minors' state constitutional right to privacy. In concluding that pregnant minors have a reasonable expectation of privacy in the circumstances, the plurality opinion said: "Although it has been suggested that, in light of the general statutory rule requiring a minor to obtain parental consent for medical care, and the existence of numerous abortion/parental consent statutes in other states, a minor has no reasonable expectation of privacy in this context, it plainly would defeat the voters' fundamental purpose in establishing a *constitutional* right of privacy if a defendant could defeat a constitutional claim simply by maintaining that statutory provisions or past practices that are inconsistent with the constitutionally protected right eliminate any 'reasonable expectation of privacy' with regard to the constitutionally protected right." (*Id.* at pp. 338–339 (plur. opn. of George, C.J.).) Justice Kennard, who concurred in the holding, observed that "California law long required parental consent for many medical procedures" but that "the Legislature has generally *not* required parental

consent for medical procedures relating to sexuality and procreation." (*Id.* at pp. 374, 375 (conc. opn. of Kennard, J.).) Here, it is true that former section 11165.1, subdivision (c)(3) made a broad range of child pornography offenses subject to mandatory reporting. But plaintiffs challenge CANRA only to the extent that it reaches simple possession or viewing of child pornography. Such conduct became subject to mandatory reporting as a result of the 2014 amendment whose constitutionality is at issue here.

The Attorney General also argues that CANRA's existence for almost three decades prior to the 2014 amendment has eroded any expectation of privacy in admissions during psychotherapy suggesting conduct that harms children. In evaluating this contention, we begin by observing that there is no general exception to the psychotherapist-patient privilege for a patient's admission that he or she has engaged in criminal conduct. The exceptions that appear in Evidence Code sections 1016 to 1027 are specific and must be "construe[d] narrowly." (*Stritzinger*, *supra*, 34 Cal.3d at p. 513.) Although there is an exception for situations where a patient has sought the services of a psychotherapist to aid the commission of a crime or to escape detection (Evid. Code, § 1018), there is no general exception for admission of a crime. Indeed, when the psychotherapist-patient privilege was codified, the Law Revision Commission said the privilege would "appl[y] in all proceedings," unlike the "physician-patient privilege[, which] does not apply in criminal proceedings." (Cal. Law Revision Com. com., reprinted at Deering's Ann. Evid. Code, *supra*, foll. § 1014, p. 216; see *ibid.* ["This difference in the scope of the two privileges is based on the fact that the Law Revision Commission has been advised that proper psychotherapy often

is denied a patient solely because he will not talk freely to a psychotherapist for fear that the latter may be compelled in a criminal proceeding to reveal what he has been told."].) In *Gonzales*, we held in the context of a commitment proceeding under the Sexually Violent Predator Act (Welf. & Inst. Code, § 6600 et seq.) that the privilege barred the admission of statements by a parolee who, in the course of psychotherapy undertaken as a condition of parole, admitted he had molested up to 16 children. (*Gonzales*, *supra*, 56 Cal.4th at pp. 364–365, 372–383.)

It is true that all jurisdictions, including California, have enacted laws requiring psychotherapists and other professionals to report child abuse and neglect in compliance with requirements for receiving federal aid to support child abuse and neglect prevention and treatment programs. (See *ante*, at pp. 10–11.) But even if psychotherapy patients have no reasonable expectation of privacy in disclosures covered by those long-standing reporting laws, the question here concerns disclosure of conduct — possessing or viewing child pornography — that such reporting laws generally do not cover. There appear to be only six states besides California with statutes that require mandatory reporting of psychotherapy patients who knowingly possess or view child pornography. (See Colo. Rev. Stat. §§ 18-6-403, 19-3-304; Del. Code Ann. tit. 11, § 1111; *id.* tit. 16, § 903; Miss. Code Ann. §§ 97-5-33, 97-5-51; Tenn. Code Ann. §§ 37-1-605, 39-17-1003; Utah Code Ann. §§ 62A-4a-403, 76-5b-201; Vt. Stat. Ann. tit. 33, §§ 4912, 4913.) Arizona law includes knowing possession of child pornography within its definition of "sexual exploitation of a minor" (Ariz. Rev. Stat. Ann. § 13-3553) but allows a psychotherapist to "withhold the reporting of [a] statement" by a patient voluntarily seeking sex offender

treatment if the psychotherapist "determines it is reasonable and necessary to accomplish the purposes of the treatment" (*id.*, § 13-3620). And federal law requires mental health professionals engaged in certain activities on federal land or in federal facilities to report the fact that a patient has viewed child pornography. (34 U.S.C. § 20341; see Off. of Legal Counsel, U.S. Dept. of Justice, Duty to Report Suspected Child Abuse Under 42 U.S.C. § 13031 (May 29, 2012) pp. 10–13.) Among all other jurisdictions, it appears that none has interpreted its CANRA equivalent to cover simple possession or viewing of child pornography.

Apart from mandatory reporting laws, 10 states have a statutory exception to the psychotherapist-patient privilege for matters concerning child abuse or neglect. (See Kan. Stat. Ann. § 65-5810; La. Code Evid. Ann. art. 510; Mich. Comp. Laws § 333.16281; Mo. Ann. Stat. § 210.140; Neb. Rev. Stat. Ann. § 27-504; Nev. Rev. Stat. Ann. § 49-213; N.C. Gen. Stat. Ann. § 8-53.3; Or. Rev. Stat. Ann. § 419B.040; Wis. Stat. Ann. § 905.04; Wyo. Stat. Ann. § 33-27-123.) In these jurisdictions, psychotherapists may reveal otherwise privileged communications not only to law enforcement or child welfare agencies in compliance with reporting laws, but also when relevant to certain administrative or judicial proceedings. (See, e.g., *State ex rel. Juvenile Dept. v. Spencer* (Or. 2005) 108 P.3d 1189, 1192–1193 [finding no privilege where the defendant was charged with child abuse in juvenile court proceedings]; *State v. McMillion* (Neb.Ct.App. 2016) 875 N.W.2d 877, 897–898 [finding no privilege where the defendant was charged with sexual assault of a child]; *State v. Hyder* (Wn.Ct.App. 2011) 244 P.3d 454, 460–462 [finding no privilege where the defendant was charged with child molestation and incest]; *In Interest of*

*S.J.* (Mo.Ct.App. 1993) 849 S.W.2d 608, 610–611 [finding no privilege in a parental termination proceeding where child abuse was alleged].)  Although these statutes have often been applied to situations involving hands-on abuse or neglect, we are unaware of any case law in these jurisdictions that has construed a child abuse or neglect exception to cover simple possession or viewing of child pornography.

It thus appears that "law and social custom" (*Hill, supra,* 7 Cal.4th at pp. 40–41) have not required child welfare reporting or authorized other disclosure of a patient's admission during voluntary psychotherapy treatment that the patient has possessed or viewed child pornography.  The Attorney General is correct that "certain acts of obtaining child pornography" have been reportable for 30 years.  But until the 2014 amendment to section 11165.1(c)(3), the reporting statute did not cover simple possession or viewing of child pornography.  And today, in the vast majority of states, neither legislative enactments nor case law indicates that a patient's admission of such conduct is subject to mandatory reporting or covered by some other exception to the norm of confidentiality that "is vitally important to the successful operation of psychotherapy." (*In re Lifschutz* (1970) 2 Cal.3d 415, 422 (*Lifschutz*).)

On remand, the parties may develop evidence that further informs this inquiry.  The evidence could reveal, for example, that prior to 2014 it was not a widespread practice for therapists to disclose to patients that they were required to report patients who admitted to simple possession or viewing of child pornography, and that therapists did not in fact report such admissions.  Conversely, the evidence could show that prior to 2014 therapists already had a general practice of informing patients that they would report such revelations to the

authorities, and that they did so report. Either finding might bear on relevant customs and practices. But we have no such facts before us at this stage of the litigation. We conclude that, for purposes of demurrer, plaintiffs have established that their patients have a reasonable expectation of privacy in admissions during voluntary psychotherapy that they have viewed or possessed child pornography.

In reaching the opposite conclusion, the dissenting opinion begins with the premise that the 2014 amendment was merely a technical update to CANRA. (Dis. opn., *post*, at pp. 4–8.) Based on that understanding, the dissent concludes that patients' disclosures of having viewed or possessed child pornography have been reportable or would have given rise to reasonable suspicion of reportable conduct since CANRA was enacted in 1987, and thus no "more than a trivial number" of plaintiffs' patients have a reasonable expectation of privacy in such disclosures. (*Id.* at p. 21.) As noted, however, the legislative history shows that simple possession or viewing of child pornography was not previously covered by former section 11165.1, subdivision (c)(3). (*Ante*, at pp. 10–12.)

The dissent places dispositive weight on plaintiffs' allegation that many of their patients have admitted to *downloading*, not just viewing, child pornography. (Dis. opn., *post*, at pp. 11–12, 18–19.) The dissent argues that because "downloading or streaming a file inherently involves making a 'duplicate[]' of it" within the meaning of former section 11165.1, section (c)(3), such conduct has long been reportable, and a patient can have no reasonable expectation of privacy in such disclosures. (*Id.* at p. 10; see *id.* at pp. 6–7, 9–10.)

We express no view on whether the term "duplicates" as used in CANRA when it was enacted in 1987 — before online child pornography was considered a serious problem — encompasses downloading or streaming a file from the Internet. Notably, the dissent cites no California authority that has interpreted the term "duplicates" in CANRA to include downloading or streaming. (Dis. opn., *post*, at pp. 9–10 [citing one federal case from New Jersey, a dictionary, and a law review article].) And to the extent the dissent relies on statements by legislators who passed the 2014 amendment (*id.* at pp. 6–7), those views " 'cannot dictate the proper construction of [CANRA] as it stood' before that amendment." (*Ante*, at p. 12.)

Importantly here, as the dissent concedes, there was " 'confus[ion]' " about CANRA's coverage, including the scope of the term "duplicates," before the 2014 amendment (dis. opn., *post*, at p. 6), and the amendment was "designed to clarify" the law (*id.* at p. 7). In cases where we have relied on a long-standing practice of disclosure to find no reasonable expectation of privacy or a diminished expectation, the long-standing practice was clear and served to put individuals on notice. (See *Lewis v. Superior Court* (2017) 3 Cal.5th 561, 575 (*Lewis*); *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 331 (*International Federation*).) Here, the dissent points to no authority or evidence indicating that the scope of the reporting requirement before the 2014 amendment clearly covered a patient's admission of having downloaded, streamed, possessed, or viewed child pornography.

Moreover, we have never held that the existence of a long-standing practice or requirement of disclosure can, by itself, defeat a reasonable expectation of privacy in the circumstances.

In *Lewis*, we concluded that the practice of sharing patients' personal information under a separate statute made the reasonable expectation of privacy in their prescription records "less robust." (*Lewis, supra*, 3 Cal.5th at p. 575.) Nevertheless, we held that patients retain a reasonable expectation of privacy in their records. (*Ibid.*) Similarly, in *International Federation*, we considered the long-standing practice of disclosing public employees' salaries as a relevant factor in deciding whether the employees have a reasonable expectation of privacy. (*International Federation, supra*, 42 Cal.4th at p. 331.) But we also surveyed the widespread practice of disclosing public employee salaries across various federal, state, and local governments before concluding that the employees do not have a reasonable expectation of privacy. (*Id.* at p. 332.) Our case law does not support the dissent's sole reliance on a purported long-standing practice or requirement of disclosure to find no reasonable expectation of privacy for the vast majority of plaintiffs' patients.

Finally, the dissent invokes the standard for facial challenges (dis. opn., *post*, at pp. 16–18) and asserts that plaintiffs, far from showing that the statute raises constitutional concerns in the great majority of its applications, "fail[] to establish a reasonable expectation of privacy under *Hill* for more than a trivial number of their patients" (*id.* at p. 21). In support of this assertion, the dissent makes a series of factual claims: "A patient's admission that he has knowingly possessed or viewed child pornography online will almost certainly cause a psychotherapist to suspect that the patient has duplicated such materials" (*id.* at p. 18); such an admission will "frequently entail" a disclosure that the patient has "copied child pornography to a computer, phone, or other device" (*id.* at p. 3);

and "it is extremely unlikely that a patient will disclose simply possessing or viewing child pornography online, without also revealing other reportable conduct" (*id.* at p. 18–19). None of these claims is supported by evidence; each is conjecture. At this stage of the case, we must "accept as true all properly pleaded facts" (*Novartis*, *supra*, 4 Cal.5th at p. 156) and " ' "give the complaint a reasonable interpretation" ' " (*Centinela*, *supra*, 1 Cal.5th at p. 1010). Plaintiffs' complaint states that their challenge involves patients who admit to possessing or viewing child pornography; what therapists will "almost certainly" suspect from such admissions and whether such admissions are "frequently" accompanied by other disclosures are factual matters for the parties to litigate. The standard of review on demurrer does not authorize us to supplement the complaint with our own factual claims.

## C.

The third threshold inquiry is whether mandatory reporting of patients' admissions of possessing or viewing of child pornography constitutes "a serious invasion of privacy." (*Hill*, *supra*, 7 Cal.4th at p. 40.) In *Hill*, we observed that "[a]ctionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right. Thus, the extent and gravity of the invasion is [*sic*] an indispensable consideration in assessing an alleged invasion of privacy." (*Id.* at p. 37.) We conclude that the invasion of privacy caused by the reporting requirement is undoubtedly serious.

As to the scope and potential impact of the invasion, CANRA requires extensive reporting of information about psychotherapy patients who admit to possessing or viewing

child pornography. Under the statute, a psychotherapist must immediately make a report by telephone to a police department, sheriff's department, county probation department, or the county welfare department upon learning that a patient has possessed or viewed child pornography. (§§ 11165.9, 11166, subd. (a).) The psychotherapist must then make a written report within 36 hours. (§ 11166, subd. (a).) The report must include "the information that gave rise to the reasonable suspicion" that the patient has possessed or viewed child pornography and "the source or sources of that information." (§ 11167, subd. (a).) The report must also include "the name, address, telephone number, and other relevant personal information" about the patient if any of that information is known. (*Ibid.*) If the psychotherapist fails to make such a report, he or she is subject to criminal prosecution and professional discipline. (§ 11166, subd. (c); Bus. & Prof. Code, § 4982, subd. (w); Cal. Code Regs., tit. 16, § 1397.1.)

The agency that receives the initial report must share the information with various other agencies. For example, law enforcement and county agencies are required to cross-report the information to each other, to child welfare agencies, and to district attorneys' offices. (§ 11166, subds. (j), (k); see *B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 181–185.) The statute then requires that " 'an investigation be conducted on every report received.' " (*B.H.*, at p. 183.) The reporting statute encourages the agencies to continue to share information with each other throughout the investigation. (§ 11166.3, subd. (a).) If the investigation substantiates the initial report, the report must be forwarded to the Department of Justice, which files the information in the Child Abuse Central Index. (§ 11170, subd. (a)(1)–(3).) The information in the database must then be

made available to prosecutors, adoption agencies, government agencies conducting certain background checks, and other agencies that regulate persons who may have contact with children. (§ 11170, subd. (b).)

Further, as the Attorney General confirms, psychotherapy patients who admit to possessing or viewing child pornography may face felony prosecution, which may result in a prison sentence and public registration as a sex offender. (§§ 290, 311.11.) The possibility of criminal prosecution carries with it a significant potential for further public disclosures. Indeed, this is not an area in which government agents can or should be expected to keep the information to themselves. (See *Lewis*, *supra*, 3 Cal.5th at pp. 576–577.)

As to the nature and gravity of the invasion, there is no question that revelations made by patients who seek psychotherapy to treat sexual disorders, including sexual attraction to children, concern the most intimate aspects of human thought and behavior, however noxious or depraved. What this court observed in *Lifschutz* seems apt here: " ' "The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition." ' " (*Lifschutz*, *supra*, 2 Cal.3d at p. 431.) Mandatory reporting of such information is a severe invasion, for "[i]f there is a quintessential zone of human privacy it is the mind. Our ability to exclude others from our mental processes is intrinsic to the human personality." (*Long Beach City Employees Assn. v. City of Long Beach* (1986) 41 Cal.3d 937, 944.) In sum, plaintiffs

have alleged a serious invasion of privacy under the third threshold inquiry of the *Hill* framework.

**IV.**

Having determined that plaintiffs' allegations satisfy the threshold inquiry for a cognizable privacy claim, we turn now to examine the standard of justification that the reporting requirement must meet.

In *Hill*, we canvassed our state constitutional privacy decisions and observed that some cases had applied a " 'compelling interest' " test while others had applied "less intense scrutiny" in the form of general balancing tests. (*Hill*, *supra*, 7 Cal.4th at p. 34.) We explained: "The particular context, i.e., the specific kind of privacy interest involved and the nature and seriousness of the invasion and any countervailing interests, remains the critical factor in the analysis. Where the case involves an obvious invasion of an interest fundamental to personal autonomy, e.g., freedom from involuntary sterilization or the freedom to pursue consensual familial relationships, a 'compelling interest' must be present to overcome the vital privacy interest. If, in contrast, the privacy interest is less central, or in bona fide dispute, general balancing tests are employed." (*Ibid.*) The parties dispute which standard applies.

Plaintiffs note that our decision in *Hill* described *Stritzinger* as having held that a "patient's privacy interest in psychotherapy must yield to compelling state interests" and that "detection and prevention of child abuse constitutes such an interest." (*Hill*, *supra*, 7 Cal.4th at p. 35, fn. 11, citing *Stritzinger*, *supra*, 34 Cal.3d at p. 511.) Relying on *Stritzinger* and *Hill*'s citation to that case, the Court of Appeal in

*Kirchmeyer v. Phillips* (2016) 245 Cal.App.4th 1394 concluded that "[t]he psychotherapist-patient privilege is a kind of privacy interest that may be overcome only on a showing of a compelling state interest." (*Id.* at p. 1404.)

But *Stritzinger* did not have occasion to apply the compelling interest test; we instead held that "on the particular facts of his case" a psychotherapy patient's disclosures of child molestation were not subject to mandatory reporting and were therefore privileged. (*Stritzinger*, *supra*, 34 Cal.3d at p. 512; see *id.* at pp. 513–514.) Although *Stritzinger* cited cases that had applied the compelling interest test to constitutional privacy claims (*id.* at p. 511), we subsequently said that not "every assertion of a privacy interest under article I, section 1 [of the California Constitution] must be overcome by a 'compelling interest' " (*Hill*, *supra*, 7 Cal.4th at pp. 34–35). More recently, we said it is erroneous to adopt a "de facto starting assumption that such an egregious invasion [requiring a compelling interest as justification] is involved in every request for discovery of private information. Courts must instead place the burden on the party asserting a privacy interest to establish its extent and the seriousness of the prospective invasion, and against that showing must weigh the countervailing interests the opposing party identifies, as *Hill* requires. What suffices to justify an invasion will . . . vary according to the context. Only obvious invasions of interests fundamental to personal autonomy must be supported by a compelling interest." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 557.)

As defendants note, this case does not involve a privacy interest in bodily autonomy and is thus different from *American Academy of Pediatrics*, where we held that a statute requiring a pregnant minor to obtain parental consent or judicial

authorization before having an abortion "unquestionably impinges upon 'an interest fundamental to personal autonomy.'" (*American Academy of Pediatrics, supra,* 16 Cal.4th at p. 340 (plur. opn. of George, C.J.).) In *Hill*, we similarly said that cases dealing with the "freedom from involuntary sterilization or the freedom to pursue consensual familial relationships" involve "obvious invasion[s] of an interest fundamental to personal autonomy." (*Hill, supra,* 7 Cal.4th at p. 34.)

At the same time, we have never held that personal autonomy in the privacy context is limited to matters of bodily integrity. As amici scholars argue here, a core aspect of human autonomy is a person's ability to gain control over his impulses or desires so that he does not engage in pathological behaviors. Plaintiffs allege that this is what their patients are attempting to do: They are seeking psychotherapy to overcome their compulsions to possess or view child pornography so that they can conform their conduct to the law and social norms.

In this respect, the autonomy interest here is similar to that underlying "the oldest of the privileges for confidential communications known to the common law": the attorney-client privilege. (*Upjohn Co. v. United States* (1981) 449 U.S. 383, 389 (*Upjohn*); see *Jaffee, supra,* 518 U.S. at p. 11.) Like the attorney-client privilege, the interest that plaintiffs seek to protect is intended to encourage "the observance of law and administration of justice." (*Upjohn,* at p. 389.) Notably, the psychotherapist-patient privilege in 12 jurisdictions is stated in terms that place patient communications on the same basis of confidentiality as client communications protected by the attorney-client privilege, although the former privilege is subject to different exceptions than the latter. (See, e.g., Ariz.

Rev. Stat. Ann. § 32-2085 ["The confidential relations and communication between a client or patient and a psychologist licensed pursuant to this chapter . . . are placed on the same basis as those provided by law between an attorney and client."]; see also Ala. Code § 34-26-2; Ga. Code Ann. § 43-39-16; Idaho Code Ann. § 54-2314; Kan. Stat. Ann. § 65-5810; Mont. Code Ann. § 26-1-807; N.H. Rev. Stat. Ann. § 329:26; N.J. Stat. Ann. § 45:14B-28; N.Y. C.P.L.R. 4507; 42 Pa. Stat. and Cons. Stat. Ann. § 5944; Tenn. Code Ann. § 63-11-213; Wn. Rev. Code Ann. § 18.83.110.)  Like the ability of clients to seek advice from counsel, the ability of psychotherapy patients to seek treatment to prevent future criminal conduct and to live as law-abiding members of society implicates a basic interest in self-determination.

As we explain, however, there is ultimately no need to resolve at this juncture whether the proper standard of justification here is the compelling interest test or a general balancing test.  No one disputes that the principal purpose of the reporting requirement — preventing the sexual exploitation and abuse of children — is a weighty one.  (See *New York v. Ferber* (1982) 458 U.S. 747, 757.)  The main issue on which the parties disagree is whether the reporting requirement actually serves its intended purpose.

Defendants argue that mandatory reporting advances the state's interest in protecting children by facilitating enforcement of the child pornography laws.  As defendants note, the purpose of these laws is to protect children by drying up the market for images of their sexual abuse.  And according to the Attorney General, mandatory reporting also helps to "ensur[e] that those with direct access to children do not threaten them

with harm" and aids efforts to "rescu[e] children from sexual abuse."

Plaintiffs, by contrast, contend that there is only a "slim possibilit[y]" that the reporting requirement can assist law enforcement in identifying and rescuing children depicted in child pornography. They assert that patients who have downloaded or viewed child pornography online are "highly unlikely" to have any information about the identities, locations, or other relevant characteristics of the depicted children. Plaintiffs also allege that because child pornography is so freely and easily accessible on the Internet, patients who admit to viewing child pornography online span a wide range of psychological profiles and disorders, and do not present a serious danger of hands-on abuse. Mandatory reporting of patients who do not pose a serious danger of hands-on abuse, plaintiffs allege, would not serve any interest in preventing those patients from causing direct harm to children.

Moreover, plaintiffs' complaint alleges that the reporting requirement "deter[s] existing or potential patients who have serious sexual disorders . . . from obtaining needed psychotherapy, despite the lack of any evidence that they have engaged in 'hands-on' or 'contact' sexual abuse of children." The complaint specifically alleges that "mandated reporting of child pornography viewing will unnecessarily deter persons with sexual disorders from psychotherapy treatment," which suggests the contribution of those persons to the market for child pornography will continue unabated.

With no facts developed at this stage of the litigation, we are unable to evaluate these competing claims as to whether the reporting requirement serves its intended purpose. Our

precedent includes varied assertions on whether mandatory reporting deters psychotherapy patients from seeking treatment. (Compare *Tarasoff, supra*, 17 Cal.3d at p. 440, fn. 12 [dismissing as "entirely speculative" the concern that reporting of dangerous patients will discourage them from seeking counseling] with *Stritzinger, supra*, 34 Cal.3d at p. 514 ["it is impossible to conceive of any meaningful therapy" if the patient knows "at the outset that [the therapist] will violate his confidence and will inform law enforcement of their discussions"] and *Lifschutz, supra*, 2 Cal.3d at p. 431 [" ' "It would be too much to expect [patients] to [reveal intimate thoughts and behaviors during treatment] if they knew that all they say . . . may be revealed to the whole world from a witness stand." ' "].) The dissent relies on cases that cite decades-old studies and involve reporting requirements not at issue here. (Dis. opn., *post*, at pp. 24–25, citing *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 632 [discussing 2000 article on deterrence effects of reporting potentially violent patients], *People v. Wharton* (1991) 53 Cal.3d 522, 558 [discussing deterrence effects of reporting patients whom psychotherapists believe to be dangerous], *Tarasoff, supra*, 17 Cal.3d at p. 440, fn. 12 [discussing 1974 article that found "little if any empirical data" on deterrence effects of reporting potentially violent patients], and *Lifschutz*, at pp. 426–427 [discussing deterrence effects in context of "compel[ling] disclosure of only those matters which the patient himself has chosen to reveal by tendering them in litigation"].) No court has yet explored the ramifications of the reporting requirement challenged in this case.

At its core, plaintiffs' argument is that the reporting requirement does not further, and may in fact undermine, its

intended purpose of protecting children from sexual abuse and exploitation. If substantiated, this mismatch between means and ends would render the reporting requirement unconstitutional under any standard. We thus have no need, in advance of factual development on this critical issue, to decide whether the reporting requirement must satisfy the compelling interest test or a general balancing test.

On remand, the parties may develop evidence on a variety of relevant issues, including but not limited to the number of reports that psychotherapists have made regarding the possession or viewing of child pornography since the 2014 amendment; whether the reports have facilitated criminal prosecutions, reduced the market for child pornography, aided the identification or rescue of exploited children, or otherwise prevented harm to children; and whether there are less intrusive means to accomplish the statute's objectives. The parties may also introduce evidence on the extent to which the reporting requirement deters psychotherapy patients from seeking treatment for sexual disorders, inhibits candid communication by such patients during treatment, or otherwise compromises the practical accessibility or efficacy of treatment.

We have recognized the value of such factual development in other cases involving the state constitutional right to privacy, which were decided on the basis of fully litigated records. The *Hill* case came to our court after a bench trial that involved testimony from numerous "scientists, physicians, and sports professionals regarding the merits of the NCAA's list of proscribed drugs and the general efficacy of its drug testing program." (*Hill, supra,* 7 Cal.4th at p. 13.) Our balancing analysis relied extensively on evidence developed in the record (*id.* at pp. 45–47), and we declined to go beyond the record

evidence in evaluating the availability of less intrusive alternatives (*id.* at pp. 51–52).

Similarly, in *American Academy of Pediatrics*, *supra*, 16 Cal.4th 307, we had the benefit of an evidentiary record developed through a two-month bench trial involving live testimony from 25 witnesses and deposition testimony from six other witnesses. (*Id.* at p. 323 (plur. opn. of George, C.J.); see *ibid.* ["The witnesses represented a broad spectrum of experts with training and experience in the fields of health care, adolescent development, and the application of judicial bypass procedures in other states. The testimony covered a wide range of subjects, including the relative medical and psychological risks posed to pregnant minors by abortion and childbirth, the general maturity of minors seeking abortion, the existing guidelines and practices with regard to the counseling provided to minors seeking abortion, and the general efficacy (or lack thereof) of the judicial bypass process in other jurisdictions."].) In concluding that the parental consent law would not further the asserted interests in the health of minors and the parent-child relationship, a majority of the court observed that its determination was "supported . . . by the overwhelming evidence, much of it uncontested." (*Id.* at p. 354; see *id.* at pp. 355–356 [discussing trial testimony]; *id.* at p. 383 (conc. opn. of Kennard, J.) ["Benefitting from the experience of other states with similar laws, and a well-developed trial record, this court is equipped to assess the 'objective effect' of the parental consent law."].)

Despite no evidence bearing on the relevant questions here, our dissenting colleagues assert that "plaintiffs are unlikely to establish on remand that Assembly Bill 1775 does not substantively further its intended purpose." (Dis. opn., *post*,

at p. 21.) To support this conjecture, the dissent engages in its own factfinding in disregard of the applicable standard of review. For example, the dissent cites an opinion of the United States Department of Justice's Office of Legal Counsel asserting that some images of child pornography are " 'homemade recordings' " of family members or neighbors " 'traceable through law enforcement investigation to a particular child or children.' " (*Id.* at pp. 25–26.) But we have no evidence indicating how often patients who admit to viewing child pornography also disclose that the images are homemade, how often such disclosures are successfully traced to a particular child, or whether deterrence of patients from seeking treatment outweighs any benefits of reporting such disclosures. Nor does the dissent mention a 2009 United Nations report cited in plaintiffs' complaint, which found that among millions of child pornography images reviewed in the United States, only 0.01 percent of victims had been identified. (See Najat M'jid Maalla, Human Rights Council, U.N. Gen. Assembly, Report of the Special Rapporteur on the sale of children, child prostitution and child pornography (2009) pp. 15–16.)

Similarly, the dissent endorses the Attorney General's and District Attorney's assertions that the reporting requirement helps law enforcement stop or reduce instances of viewing child pornography. (Dis. opn., *post*, at p. 27.) But without evidence on how many patients are deterred from seeking treatment for every patient who is reported, we have no basis for concluding that the reporting requirement reduces viewing of child pornography. Nowhere does the dissenting opinion credit the allegations in plaintiffs' complaint that suggest a deterrent effect, even though "[o]n review of a demurrer, we accept as true all properly pleaded facts." (*Novartis*, *supra*, 4 Cal.5th at

p. 156.)   As amicus curiae California Medical Association observes, this case in its current posture has no record from which a court can determine whether the reporting requirement actually serves its intended purposes.

In remanding this matter, we address two additional arguments made by the Attorney General.  First, noting that plaintiffs do not question the validity of section 11165.1(c)(3) as it existed before the 2014 amendment, the Attorney General asserts that viewing or possessing online child pornography is not "sufficiently different from, and less harmful to children than, other forms of reportable abuse that a different constitutional balance is required here."  But even assuming that former section 11165.1, subdivision (c)(3) is constitutionally valid (plaintiffs appear correct that no case has so held), it is possible that persons who merely possess or view online child pornography have characteristics distinct from persons who knowingly develop, duplicate, print, or exchange child pornography.  As noted, plaintiffs claim that their patients pose no serious risk of hands-on child abuse; they make no similar claim about patients who have engaged in conduct covered by former section 11165.1, subdivision (c)(3).  Further, we have no evidence as to whether all persons subject to mandatory reporting under section 11165.1(c)(3) are inclined to seek psychotherapy or are deterred from seeking psychotherapy to the same degree.  On remand, the parties may develop facts that illuminate whether the balance of factors informing the constitutional validity of the 2014 amendment is distinguishable from the balance of factors informing the validity of other parts of section 11165.1(c)(3).

Second, the Attorney General contends that "whether expanded reporting obligations or greater therapist-patient

confidentiality will better protect children's safety is a policy matter for the Legislature to decide." A similar argument urging deference to the Legislature's policy judgment was considered and rejected in *American Academy of Pediatrics*, *supra*, 16 Cal.4th 307: "As a general rule, '[i]t is not the judiciary's function . . . to reweigh the "legislative facts" underlying a legislative enactment.' [Citation.] When an enactment intrudes upon a constitutional right, however, greater judicial scrutiny is required." (*Id.* at pp. 348–349 (plur. opn. of George, C.J.), fn. omitted.) Judicial review of duly enacted legislation is a delicate task, and our role is not to supplant the Legislature's policymaking role. But when a statute intrudes on a privacy interest protected by the state Constitution, it is our duty to independently examine the relationship between the statute's means and ends. (*Id.* at pp. 349–350.)

## V.

Plaintiffs also raise a privacy claim under the due process clause of the Fourteenth Amendment to the United States Constitution. Having determined that plaintiffs have stated a viable privacy claim under the California Constitution and that a remand for development of an evidentiary record is necessary to resolve this claim, we have no need at this juncture to reach plaintiffs' additional claim under the federal Constitution.

## CONCLUSION

We conclude that plaintiffs have asserted a cognizable privacy interest under the state Constitution such that their complaint survives demurrer and the action may proceed to factfinding on whether the reporting requirement furthers its intended purpose. Because this case comes to us on demurrer,

we have assumed the facts pleaded as true, and we have given the complaint a reasonable interpretation. Whether plaintiffs will succeed on the merits after the development of an evidentiary record remains to be seen, and we express no view on the ultimate validity of Assembly Bill 1775. Furthermore, plaintiffs have challenged CANRA's validity only to the extent it requires mandatory reporting of patients suspected of simple possession or viewing of child pornography. We do not question the validity of other reporting obligations encompassed by former section 11165.1, subdivision (c)(3). We also note that a psychotherapist violates no privilege when reporting a patient whom the psychotherapist believes to be dangerous. (Evid. Code, § 1024.) And, we repeat, there is no privacy interest in the underlying conduct at issue here; knowing possession or control of child pornography is a crime. (§ 311.11.)

We reverse the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion.


**LIU, J.**


**We Concur:**

**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

MATHEWS v. BECERRA

S240156

Dissenting Opinion by Chief Justice Cantil-Sakauye

" 'Child pornography harms and debases the most defenseless of our citizens' " (*In re Grant* (2014) 58 Cal.4th 469, 477 (*Grant*) quoting *United States v. Williams* (2008) 533 U.S. 285, 307), and "causes the child victims continuing harm by haunting the children in years to come" (*Osborne v. Ohio* (1990) 495 U.S. 103, 111). Although child pornography is not a new problem, "smartphone cameras, social media and cloud storage have made it much worse. [¶] Before the digital age, offenders had to rely on having photographs developed and sending them through the postal system, but new technologies have lowered the barriers to creating, sharing and amassing the material, pushing it to unprecedented levels." (Dance & Keller, *An Explosion in Online Child Sex Abuse: What You Need to Know*, N.Y. Times (Sept. 30, 2019) <https://www.nytimes.com/2019/09/29/us/takeaways-child-sex-abuse.html> [as of Dec. 20, 2019].)[1]

To combat the spreading plague of child pornography over the Internet, in 2014 the Legislature amended the Child Abuse and Neglect Reporting Act (Pen. Code,[2] § 11164 et seq.; CANRA). This measure clarifies that the statute's preexisting

---

[1]     All Internet citations in this opinion are archived by year, docket number and case name at <http://www.courts.ca.gov/38324.htm>.

[2]     All further statutory references are to the Penal Code unless otherwise indicated.

requirement that psychotherapists report to an appropriate authority a patient's admission of duplicating photographs or videos of child pornography also applies when a patient discloses having downloaded or otherwise obtained such material over the Internet. Plaintiffs challenge this amendment — but not the original disclosure requirement. The majority concedes that as originally enacted, CANRA requires psychotherapists to disclose the fact that a patient knowingly " 'duplicates' " an image of child pornography (maj. opn., *ante*, at p. 10), which occurs whenever a patient copies an online file containing child pornography to a computer, phone, or other device. Yet without calling into question the long-standing original requirement, the majority concludes that plaintiffs have stated a cause of action that the amendment facially violates their patients' privacy rights.

I disagree. In concluding that plaintiffs' complaint survives demurrer, the majority misapplies the inquiry set forth in *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39-40 (*Hill*) and the standard that governs facial challenges to a statute. *Hill* demands that a plaintiff in a state constitutional privacy case establish that the challenged conduct infringes upon a reasonable expectation of privacy. (*Id.* at p. 40.) But I do not perceive any such expectation among the cohort of patients whose interests are pressed by the psychotherapist plaintiffs here. On the contrary, the requirement before us is akin to other mandatory reporting rules governing psychotherapists that have never been understood as infringing upon their patients' reasonable privacy expectations. And although the majority responds to the well-established reporting requirement by perceiving a possible privacy expectation among only those patients who admit to viewing or possessing child

2

pornography, without more, these statements will as a general matter still encompass conduct that long has been understood as triggering the reporting requirement.

Even assuming for the sake of argument that a small class of patients could claim a reasonable expectation of privacy upon communicating their possession or viewing of child pornography online, plaintiffs still have not met the rigorous standard that applies to claims alleging that a statute is facially unconstitutional. A plaintiff who brings a facial challenge to a statute must demonstrate at a minimum that the statute creates constitutional concerns "in the generality or great majority of cases." (*T-Mobile West LLC v. City and County of San Francisco* (2019) 6 Cal.5th 1107, 1117, fn. 6 (*T-Mobile*).) It is apparent even on demurrer that plaintiffs cannot satisfy this burden. A disclosure that one has knowingly possessed or viewed child pornography will frequently entail a disclosure that one has copied child pornography to a computer, phone, or other device. Even more often, such admission will cause a therapist to reasonably suspect that a patient has engaged in other reportable conduct — with such suspicion, by itself, being sufficient to trigger the reporting requirement. Because there is no dispute that mandatory disclosure of the *copying* is constitutionally permissible, those who admit to *possessing or viewing* child pornography online will often be subject to mandatory reporting in any event. Applying CANRA, as amended, to those child pornography possessors and viewers poses no constitutional problem, defeating any facial challenge concerning child pornography viewers as a group.

Last, even assuming that remand is appropriate to allow the trial court to balance plaintiffs' asserted privacy concerns against important competing interests (*Hill, supra,* 7 Cal.4th at

pp. 37-38), the compelling state interest in protecting children from the harm caused by sexual exploitation over the Internet will almost certainly outweigh the alleged privacy invasion.

For these reasons, I respectfully dissent.

## I. ASSEMBLY BILL 1775 MERELY UPDATED CANRA TO FURTHER PROTECT CHILDREN FROM SEXUAL EXPLOITATION OVER THE INTERNET

I begin with a discussion of the 2014 amendment to CANRA. As will be explained, this amendment merely updated the statute's definition of "sexual exploitation" to keep pace with modern technology.

"The intent and purpose of [CANRA] is to protect children from abuse and neglect." (§ 11164, subd. (b).) All persons participating in the investigation of suspected child abuse or neglect must "consider the needs of the child victim and . . . do whatever is necessary to prevent psychological harm to the child victim." (*Ibid.*) To that end, CANRA requires certain individuals, including psychotherapists, to report incidents of suspected "child abuse or neglect" to a specified agency. (§ 11166, subd. (a); see § 11165.7, subd. (a)(21).) The statute defines the term "child abuse or neglect" to include "sexual abuse" (§ 11165.6), which in turn includes "sexual exploitation" (§ 11165.1, subd. (c)). From 1987 to 2014, CANRA defined "sexual exploitation" as including "[a]ny person who depicts a child in, or who knowingly develops, duplicates, prints, or exchanges, any film, photograph, video tape, negative, or slide" depicting child pornography. (Stats. 1987, ch. 1459, § 5, p. 5518 (former section 11165.1, subd. (c)(3)).)

In the decades after CANRA was enacted, new technologies appeared that facilitated the production,

distribution, and consumption of child pornography through online or digital means. In 2014, responding to this concern, the Legislature unanimously passed Assembly Bill No. 1775 (2013-2014 Reg. Sess.) (Assembly Bill 1775). The bill amended CANRA's definition of "sexual exploitation" to also apply to any person who knowingly "downloads, streams, [or] accesses through any electronic or digital media" child pornography. (§ 11165.1, subd. (c)(3), as amended by Stats. 2014, ch. 264, § 1.) Like the prior version of CANRA, the legislative history of Assembly Bill 1775 reflects an intent to protect victims of suspected child abuse. According to the bill's author, Assembly Bill 1775 was designed to " 'further ensure the protection of children from the proliferation of sexual exploitation through internet child pornography. The State Legislature has a duty to ensure it does everything within its power to make certain the most vulnerable of our society, our children, are protected.' " (Assem. Conc. Sen. Amends. to Assem. Bill No. 1775 (2013-2014 Reg. Sess.) as amended May 13, 2014, p. 3.)[3]

---

[3]     Numerous organizations representing mental health professionals subject to CANRA's mandatory reporting requirement supported Assembly Bill 1775. The California Association of Marriage and Family Therapists (CAMFT), on behalf of its 30,000 members, sponsored the legislation. (Senate Rules Com., Office of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1775 (2013-2014 Reg. Sess.) as amended May 13, 2014, p. 1.) In a letter of support, CAMFT declared that Assembly Bill 1775 would "ensure that the law adequately reflects changes in technology to better protect children from being sexually exploited through internet child pornography." (Cathy Atkins, CAMFT, letter in support of Assem. Bill No. 1775 (2013-2014 Reg. Sess.) Feb. 19, 2014, p. 1.) Several other organizations representing mandatory reporters, including the

The legislative history of Assembly Bill 1775 shows that "[t]he purpose of th[e] bill is to update the definition of 'sexual exploitation' in the mandated child abuse reporting law with respect to visual depictions of children in obscene sexual conduct to reflect modern technology. . . ." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1775 (2013-2014 Reg. Sess.) as amended May 13, 2014, p. 1.) Committee and floor analyses of Assembly Bill 1775 uniformly describe the amendment as making "purely technical revisions" to the definition of "sexual exploitation" to "reflect modern technology." (Sen. Com. on Public Safety, Rep. on Assem. Bill No. 1775 (2013-2014 Reg. Sess.) as amended May 13, 2014, pp. 1-2; see *id.* at p. 7 [terms added to definition of sexual exploitation "ensure the reporting requirements related to internet child pornography are defined to reflect modern technology"].) Indeed, the bill's history further suggests that the updated definition covers conduct "that would likely [be] include[d] . . . even absent the update." (Assem. Com. on Appropriations, Analysis of Assem. Bill No. 1775, *supra,* as amended Mar. 19, 2014, p. 1.) As the bill's author explained, the "downloading or streaming of child pornography" is the "modern" equivalent of the "printing or copying of such materials," and the Legislature wished to eliminate any existing "confus[ion]" of "mandated reporters . . . on whether they should report the downloading or streaming of child pornography, as

California Association for Licensed Professional Clinical Counselors, the Board of Behavioral Sciences, and the California Psychological Association, publicly expressed support for the bill. (Senate Rules Com., Office of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1775, *supra,* as amended May 13, 2014, p. 3.)

they are required to with the printing or copying of such materials." (Sen. Com. on Pub. Safety, Rep. on Assem. Bill No. 1775, *supra*, as amended May 13, 2014, p. 7.)[4]

The legislative history thus makes plain that Assembly Bill 1775 was designed to clarify that CANRA protects children from being sexually exploited through online child pornography. Consistent with this purpose, the measure merely updated a definition to keep in step with modern technology and to specify that the modern equivalent of conduct already reportable under the existing statute is, in fact, reportable. Indeed, as noted, copying a file from the Internet (i.e., downloading) was already covered by the term "duplicates" in the former version of CANRA. This background informs an appropriate evaluation of whether plaintiffs have successfully alleged a violation of their

---

[4] Despite acknowledging that "some legislative history assert[s] that the 2014 amendment was a mere technical update to CANRA" (maj. opn., *ante*, at p. 12), the majority presumes instead that the Legislature intended to change the meaning of the law (*ibid.*). But we have recognized that the purpose of amendatory changes "is not necessarily to change the law." (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 568.) "While an intention to change the law is usually inferred from a material change in the language of the statute [citations], a consideration of the surrounding circumstances may indicate, on the other hand, that the amendment was merely the result of a legislative attempt to clarify the true meaning of the statute. [Citation.]" (*Ibid.*; see also *W.R. Grace & Co. v. Cal. Emp. Com.* (1944) 24 Cal.2d 720, 729 ["The fact that the statute was . . . amended, however, does not necessarily indicate that the law was different before the amendment. Although courts ordinarily infer an intent to change the law from a material change in the language of a statute [citations], the circumstances may indicate merely a legislative intent to clarify the law"].)

patients' constitutional right to privacy under the framework set forth in *Hill, supra,* 7 Cal.4th 1.

## II.  CANRA'S LONG-STANDING REPORTING REQUIREMENT SIGNIFICANTLY LIMITS PATIENTS' REASONABLE PRIVACY EXPECTATIONS

"[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following:  (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Hill*, *supra*, 7 Cal.4th at pp. 39-40.)  With regard to the second of these elements, as discussed above, the psychotherapist-patient relationship has for more than three decades featured a reporting requirement that is triggered when a patient discloses having acquired child pornography in any of several ways.  In my view, the majority fails to supply a convincing explanation concerning how a patient can have a reasonable expectation of privacy in similar disclosed conduct when the consumption of pornography occurs through online channels.

" 'The extent of [a privacy] interest is not independent of the circumstances.' [Citation.]  Even when a legally cognizable privacy interest is present, other factors may affect a person's reasonable expectation of privacy." (*Hill*, *supra*, 7 Cal.4th at p. 36.)  "[C]ustoms, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." (*Ibid.*, citing *Whalen v. Roe* (1977) 429 U.S. 589, 602 (*Whalen*), *Fraternal Order of Police, Lodge No. 5. v. City of Philadelphia* (3d Cir. 1987) 812 F.2d 105, 114.)  In the context of a disclosure requirement analogous to the one

before this court, a relevant consideration is whether similar disclosures have been required in the past. (*Whalen*, at p. 602.)

Since its enactment, CANRA has expressly excepted information regarding suspected child abuse or neglect from the psychotherapist-patient privilege. (§ 11171.2, subd. (b).) For more than 30 years, mental health professionals in California have been required to make a report under CANRA when they reasonably suspect that a patient has sexually abused or exploited a child, including by knowingly "develop[ing], duplicat[ing], print[ing] or exchang[ing]" photographs or videos depicting child pornography. (Former § 11165.1, subd. (c)(3).) Plaintiffs do not challenge this established rule. (Maj. opn., *ante*, at pp. 6-8.)

Given this decades-old reporting requirement, a patient cannot reasonably expect that psychotherapists will *not* report the patient's disclosures of engaging in the same conduct over the Internet. As the legislative history illustrates, Assembly Bill 1775 made "purely technical revisions" (Sen. Com. on Public Safety, Rep. on Assem. Bill No. 1775, *supra*, as amended May 13, 2014, pp. 1-2) to CANRA's definition of sexual exploitation to clarify that conduct which was "likely include[d]" in the definition "even absent the update" must be reported (Assem. Com. on Appropriations, Analysis of Assem. Bill No. 1775, *supra*, as amended Mar. 19, 2014, p. 1).

The 2014 amendment consequently added the words "downloads, streams, [or] accesses through any electronic or digital media" to section 11165.1, subdivision (c)(3). By definition, the terms "download[ing]" and "stream[ing]" child pornography online involve the act of "duplicat[ing]" a file to a user's personal technology device. (§ 11165.1, subd. (c)(3); see,

e.g., *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.* (D.N.J. 2003) 275 F.Supp.2d 543, 549, fn. 2 [downloading "is a process by which a complete audio or video clip is delivered to and stored on a consumer's computer"]; Barron's Dict. of Computer and Internet Terms (12th ed. 2017) p. 152 ["download" means "to transmit a file or program from a central computer to a smaller computer or a computer at a remote site"]; Martin & Newhall, *Criminal Copyright Enforcement Against Filesharing Services* (2013) 15 N.C.J. L. & Tech. 101, 119, fn. 97 ["Stream[ing]" content from the Internet involves making a "temporary 'buffer' copy of a video file, which is destroyed as the video is played"]; Barron's Dict. of Computer and Internet Terms, at p. 472 [defining "streaming" as "delivering audio or video signals in real time, without waiting for a whole file to download before playing it"].)

Accordingly, downloading or streaming a file inherently involves making a "duplicate[]" of it (former § 11165.1, subd. (c)(3)), and the majority does not contend otherwise. Ever since 1987, CANRA has required psychotherapists to report when their patients disclose duplicating photographs or videos of child pornography. The Legislature did not expand this rule when it added the terms "downloads" and "streams" to the statute's definition of "sexual exploitation"; it merely clarified that the old rule also applies to newer technologies. (§ 11165.1, subd. (c)(3).) Under the circumstances, a patient cannot have a reasonable expectation of privacy in disclosing information that has for so long been the subject of mandatory reporting.

Perhaps in an effort to avoid addressing the more obvious similarities between the current and former versions of CANRA, the majority emphasizes that plaintiffs are challenging "simple possession or viewing" of child pornography online (maj. opn.,

*ante*, at p. 10), which plaintiffs assert was made reportable only by Assembly Bill 1775. Although it is not clear that any of terms in the 2014 amendment are synonymous with simple possession or viewing (because even the phrase "knowingly . . . accesses through electronic or digital media" (§ 11165.1, subd. (c)(3)) describes affirmative conduct in seeking to obtain child pornography online), even assuming that the amendment covers such conduct, the majority's approach suffers from several deficiencies.[5]

As a preliminary matter, it is unclear how a person can possess child pornography accessed through electronic or digital means without also having downloaded it. Indeed, we must accept as true the factual allegations in plaintiffs' complaint that " 'many' " of their patients " 'have admitted *downloading and* viewing child pornography on the Internet.' " (Maj. opn., *ante*, at p. 6, italics added; see *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 ["For purposes of reviewing a demurrer, we accept the truth of material facts properly pleaded in the operative complaint"] (*Yvanova*).) As discussed above, downloading child pornography is simply the modern term for duplicating such material, which has been reportable conduct for decades. Accordingly, even as to patients who admit to knowingly possessing child pornography obtained online, they

---

[5] Although the majority repeatedly characterizes the challenged conduct as "simple possession or viewing" (maj. opn., *ante*, at pp. 10, 11, 24, 27) of child pornography, it bears emphasizing that CANRA only requires the reporting of a person who "knowingly" engages in the specified conduct (§ 11165.1, subd. (c)(3)). It would not, for example, apply to a person who wanders into a room and unexpectedly sees child pornography displayed on another's computer.

have no reasonable expectation of privacy in disclosing such behavior under the circumstances because their conduct — possessing online images or videos of child pornography by downloading (i.e., duplicating) them — has been reportable since CANRA was enacted more than 30 years ago.

Yet even assuming that Assembly Bill 1775 makes reportable a narrow category of conduct that psychotherapists were not previously required to disclose — a patient who admits only knowingly *viewing* child pornography online — it remains doubtful that under normal circumstances these patients could claim a reasonable expectation of privacy. CANRA requires a mandated reporter to report whenever he or she "has knowledge of . . . a child whom the mandated reporter knows *or reasonably suspects* has been the victim of child abuse or neglect." (§ 11166, subd. (a), italics added.) A patient's admission that he has knowingly viewed child pornography online will almost if not always give rise to reasonable suspicion that the patient has downloaded or duplicated such materials, or otherwise engaged in conduct that has been reportable for decades under CANRA. And, only rarely, if ever, will a patient disclose simply viewing child pornography online, without also revealing other reportable conduct (i.e., duplicating those images or videos to the patient's computer). Indeed, plaintiffs' complaint is replete with admissions that "many" of their patients have "*download[ed] and* view[ed]" child pornography online. (Italics added.)

*Whalen*, *supra*, 429 U.S. 589 is instructive. (See *Hill*, *supra*, 7 Cal.4th at p. 36.) In *Whalen*, the Supreme Court held that the mandatory reporting of certain drug prescriptions to the New York Department of Health did not violate a patient's constitutional right to privacy because such disclosures were not

"significantly different" from those that were required under a prior law or "meaningfully distinguishable" from other invasions of privacy that are associated with health care. (*Whalen*, at p. 602.)  The same is true here.  At least the vast majority of conduct that, as communicated to a psychotherapist, is subject to reporting under the 2014 amendment was already subject to mandatory reporting under the 1987 version of CANRA.   And to the extent that Assembly Bill 1775 can be construed to include admissions limited to having knowingly viewed child pornography online, this behavior is not "significantly different" or "meaningfully distinguishable" from what has triggered required reporting for decades. (*Whalen*, at p. 602.)

There are also practical problems with the majority's approach.   Consider the following hypotheticals.   A patient admits to knowingly duplicating a single photograph containing child pornography: reportable.  A patient admits to knowingly viewing 1,000 images of child pornography online: constitutionally protected.   A patient discloses knowingly viewing and printing one photograph depicting child pornography: reportable.   A patient discloses knowingly possessing 3,000 images of child pornography on his computer, which he only could have obtained by downloading them: constitutionally protected.  These anomalous results further suggest that the majority's approach is out of step with what a reasonable expectation of privacy actually entails.

In an effort to sidestep the conclusion that CANRA's legislative history compels, the majority claims that we "considered and rejected" a similar argument in *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307. (Maj. opn., *ante*, at p. 23.)  It is true that a three-justice plurality in

that case rejected the idea that "a defendant could defeat a constitutional claim simply by maintaining that statutory provisions or past practices that are inconsistent with the constitutionally protected right eliminate any 'reasonable expectation of privacy' with regard to the constitutionally protected right." (*American Academy*, at p. 339 (plur. opn. of George, C. J.).) But *American Academy* is not dispositive on the issue. There, the plurality opinion was referring to a far more general statutory rule requiring parental consent for medical care, not — as here — comparing two versions of the same statute regulating substantially similar if not identical conduct. In other words, a minor could still have a reasonable privacy expectation in her decision to obtain an abortion, even if her parents had to be notified about quite different medical procedures.

Moreover, contrary to the majority's assertion (maj. opn., *ante*, at p. 23), nothing in *American Academy* prohibits courts from considering relevant laws as "customs" and "practices" surrounding particular activities in determining whether a plaintiff has a reasonable expectation of privacy. (*Hill, supra*, 7 Cal.4th at p. 36.) Indeed, our precedent endorses such an approach.

In *Lewis v. Superior Court* (2017) 3 Cal.5th 561 (*Lewis*), we determined that patients retained a "less robust" expectation of privacy in their prescription records under the Controlled Substance Utilization Review and Evaluation System report, in part, because patients are on notice that their personal information may be shared under a different statute. (*Lewis*, at p. 575, citing Civ. Code, § 1798.24, subd. (e).) In *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, we likewise

14

held that public employees do not have a reasonable expectation of privacy in the amount of their salaries because the Attorney General has held the long-standing position that government payroll information was a matter of public record. (*Id.* at pp. 331-332.) Consistent with these decisions, because psychotherapists in California have long been required to report a patient's disclosure that he knowingly "duplicate[d]" photographs or videos of child pornography, the patient cannot reasonably expect that disclosures of having knowingly "download[ed], stream[ed], [or] access[ed]" such images online will be kept confidential. (§ 11165.1, subd. (c)(3).)

For all of the foregoing reasons, it seems extremely doubtful that plaintiffs' patients who disclose only having possessed or viewed child pornography can claim a reasonable expectation of privacy. But we need not dwell on the possibility that a small contingent of these patients might have such an expectation, because as discussed below, plaintiffs must allege far more to proceed with their facial challenge.[6]

---

[6] Although the preceding discussion addresses *Hill*'s second threshold element — a reasonable expectation of privacy in the circumstances — it also undermines plaintiffs' claim regarding *Hill*'s third threshold element — the invasion of privacy must be serious. Given the strong likelihood that plaintiffs' patients will disclose conduct that is reportable under the former version of CANRA, which plaintiffs do not challenge, to the extent the 2014 amendment reaches any otherwise nonreportable conduct, any invasion of privacy would be minimal at best, not serious.

The majority's contrary conclusion, based largely on *Long Beach City Employees Assn. v. City of Long Beach* (1986) 41 Cal.3d 937, 944, is misguided. The majority reasons that the privacy invasion here is "severe" because reporting invades

### III. BECAUSE A SIZABLE NUMBER OF PATIENTS LACK A REASONABLE EXPECTATION OF PRIVACY IN THEIR DISCLOSURES REGARDING CHILD PORNOGRAPHY, PLAINTIFFS' FACIAL CHALLENGE FAILS

As noted, plaintiffs challenge Assembly Bill 1775 to the extent it covers "psychotherapists who treat persons who have possessed or viewed child pornography but [in the therapists' view] present no serious danger of hands-on sexual abuse or exploitation of children." (Maj. opn., *ante*, at p. 13.) The majority acknowledges that plaintiffs' claim and the relief that would follow " 'reach beyond the particular circumstances of these plaintiffs' and 'must therefore satisfy [the] standards for a facial challenge to the extent of that reach.' " (*Ibid.*, citing *Doe v. Reed* (2010) 561 U.S. 186, 194.) Yet the majority fails to explain how plaintiffs have sustained this heavy burden.

"The standard for a facial constitutional challenge to a statute is exacting." (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 218 (*Today's Fresh Start*).) The courts will presume a statute is valid unless

---

" 'the mind' " and the patient's " 'mental processes,' " which constitute " 'a quintessential zone of human privacy.' " (Maj. opn., *ante*, at p. 33.) But the amendment here at issue requires the reporting, not of mental processes, but of criminal *conduct* — downloading, streaming, or accessing child pornography by electronic means — that actually and directly inflicts harm on the child. The reporting of that conduct reveals a patient's mental process no more than does any other requirement that a specified act be reported. Because this case involves the reporting of voluntary disclosures to treating professionals regarding criminal acts, it is nothing like *Long Beach*, which involved the mandatory administration of polygraph examinations to "compel[] communication of '*thoughts, sentiments, and emotions*' which the examinee may have chosen not to communicate." (*Long Beach*, at p. 944, italics added.)

its " ' "unconstitutionality clearly, positively, and unmistakably appears." ' " (*In re Ricky H.* (1970) 2 Cal.3d 513, 519.) Plaintiffs making a facial challenge " ' "cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular application of the statute." ' " (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084; see also *Zuckerman v. State Bd. of Chiropractic Examiners* (2002) 29 Cal.4th 32, 38-39.) "These formidable rules insulating a statute from facial attack are understandable in light of the severe remedy for a successful facial challenge. . . ." (*In re Marriage of Siller* (1986) 187 Cal.App.3d 36, 48.)

"Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.' [Citation.] Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither ' "anticipate a question of constitutional law in advance of the necessity of deciding it" ' nor ' "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." ' [Citations.] Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that ' "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people." ' " (*Washington State Grange v. Washington State Republican Party* (2008) 552 U.S. 442, 450-451.)

This court has not settled on a precise formulation of the applicable standard for facial challenges. (See *T-Mobile*, *supra*, 6 Cal.5th at p. 1117, fn. 6.) But even under the least onerous

phrasings of the test, plaintiffs must show that the 2014 amendment will create constitutional concerns "in the generality or great majority of cases" involving patients who have admitted possessing or viewing child pornography but who (in the therapists' estimation) present no serious danger of hands-on sexual abuse or exploitation of children. (*Ibid.*; see *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017) 3 Cal.5th 1118, 1145-1146 ["[I]n order to succeed on a facial challenge, it is not enough to show that *some* hypothetical applications of the . . . statute might result in arbitrary or discriminatory treatment. Instead, [a plaintiff] must show that the statute 'inevitably pose[s] a present and total fatal conflict' with equal protection principles [citation] or, at the least, that the statute violates equal protection 'in the *generality* or *great majority* of cases' "]; *Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1132 [courts may not invalidate a statute simply because "[t]here are imaginable scenarios" in which a constitutional problem may arise].)

For many of the reasons stated *ante*, no such showing has been made here. As noted, a psychotherapist must make a report under CANRA whenever he or she "has knowledge of . . . a child whom the mandated reporter knows *or reasonably suspects* has been the victim of child abuse or neglect." (§ 11166, subd. (a), italics added.) A patient's admission that he has knowingly possessed or viewed child pornography online will almost certainly cause a psychotherapist to suspect that the patient has duplicated such materials. The majority does not dispute that downloading and streaming child pornography online involves making a duplicate of such content, nor that the only way to "possess" images accessed over the Internet is to download a copy of them. Moreover, it is extremely unlikely that

a patient will disclose simply possessing or viewing child pornography online, without also revealing other reportable conduct (i.e., downloading those images or videos to the patient's computer). Indeed, as discussed previously, plaintiffs' complaint alleges that " 'many' " of their patients " 'have admitted *downloading* and viewing child pornography on the Internet.' " (Maj. opn., *ante*, at p. 6, italics added.) Thus, Assembly Bill 1775 does not create constitutional concerns "in the generality or great majority of cases" to which it applies (*T-Mobile*, *supra*, 6 Cal.5th at p. 1117, fn. 6), even if plaintiffs' facial challenge is properly viewed as concerning only those who have viewed or possessed child pornography through electronic or digital media. (See, e.g., *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 502 ["While due process requirements might arguably prevent prosecution in a particular case . . . plaintiffs' facial attack is inadequate because they have not demonstrated a deprivation of due process in the 'vast majority' [citation] or ' "generality" ' [citation] of cases"].)

The majority maintains that these facts are "conjecture" and not supported by evidence. (Maj. opn., *ante*, at p. 31.) But it need look no further than the factual allegations in plaintiffs' complaint, which we must accept as true. (*Yvanova*, *supra*, 62 Cal.4th at p. 924.) The complaint concedes that " 'many' " of plaintiffs' patients " 'have admitted *downloading* and viewing child pornography on the Internet.' " (Maj. opn., *ante*, at p. 6.) Giving the complaint a reasonable interpretation, as we must, it is obvious that " 'many' " of plaintiffs' patients have disclosed not only viewing child pornography online, but also downloading such material. (*Ibid.*) Accordingly, those patients have no reasonable expectation of privacy, and, even on demurrer, plaintiffs' facial challenge fails.

Moreover, other long-standing exceptions to the psychotherapist-patient privilege may well require reporting a patient who has simply "possessed or viewed" child pornography, even if the psychotherapist believes there is no "serious danger of hands-on sexual abuse." (Maj. opn., *ante*, at p. 13.) The dangerous patient exception provides that there is no privilege if the patient is in such a mental or emotional condition as to be "dangerous" to himself or others. (Evid. Code, § 1024.) It does not require the danger to be serious, nor limit it to hands-on abuse. As a result, under Evidence Code section 1024 a patient who presents *some* danger of hands-on abuse to a child victim would have no reasonable expectation of privacy in disclosing to a psychotherapist that he viewed or possessed child pornography online. Similarly, given the severe harm that simple viewing causes to the child victim (*Grant, supra,* 58 Cal.4th at p. 477; *New York v. Ferber* (1982) 458 U.S. 747, 757 (*Ferber*)), a patient who presents no risk of "hands-on" abuse but displays a "hands-off" danger may also have no reasonable expectation in disclosing that he viewed child pornography online under the dangerous patient exception.

The majority summarily concludes that the dangerous patient exception does not apply because "plaintiffs' complaint makes clear that they do not believe the patients whose privacy is at issue pose 'a serious danger' . . . to themselves or to others." (Maj. opn., *ante,* at p. 21, citation omitted.) But the exception set forth in Evidence Code section 1024 is not limited to *seriously* dangerous patients, and plaintiffs have not alleged that their patients pose *no* danger. In any event, plaintiffs' complaint refers only to the dangers " 'of engaging in "hands-on" sexual abuse or exploitation of children or the distribution of child pornography to others.' " (Maj. opn., *ante,* at pp. 6-7.) It says

nothing about the danger these patients pose in causing *non*-"hands-on" harm by viewing the material. As the majority elsewhere acknowledges, consumers of child pornography "perpetuate the victimization with every viewing." (*Id.* at p. 3.)

An example illustrates the peril underlying the majority's approach. Imagine a patient discloses to his psychotherapist that he recently logged into a live-streaming platform to watch a man sexually assault a six-year-old boy. The patient admits that he cheered and masturbated as he watched the boy be orally raped and violently penetrated. (See Keller & Dance, *Child Abusers Run Rampant as Tech Companies Look the Other Way*, N.Y. Times (Nov. 9, 2019) <https://www.nytimes.com/interactive/2019/11/09/us/internet-child-sex-abuse.html> [as of Dec. 20, 2019].) Under plaintiffs' approach, such disclosure would be constitutionally protected, so long as, in the psychotherapist's estimation, the man himself posed no "serious" danger of "hands-on" abuse. Such a man is constitutionally entitled to have a psychotherapist keep his secret, plaintiffs reason — unless, of course, the man admits to copying a recording of the event ("duplicat[ing] . . . any . . . video" under former section 11165.1, subd. (c)(3)), in which case the constitutional balance is somehow different, and reporting must occur.

## IV. PLAINTIFFS ARE UNLIKELY TO ESTABLISH ON REMAND THAT ASSEMBLY BILL 1775 DOES NOT SUBSTANTIVELY FURTHER ITS INTENDED PURPOSE

In light of plaintiffs' failure to establish a reasonable expectation of privacy under *Hill* for more than a trivial number of their patients, or to satisfy the "exacting" standards of a facial challenge to a statute (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 218), the demurrers may be properly sustained on either of

these grounds. Even assuming, however, that plaintiffs have satisfied *Hill*'s three threshold elements for an invasion of privacy claim and successfully challenged Assembly Bill 1775 on its face, they have a difficult hill to climb on remand to demonstrate that the asserted privacy concern constitutes a violation of the state constitutional right to privacy.

"Privacy concerns are not absolute; they must be balanced against other important interests. [Citations.] '[N]ot every act which has some impact on personal privacy invokes the protections of [our Constitution] . . . . [A] court should not play the trump card of unconstitutionality to protect absolutely every assertion of individual privacy.'" (*Hill*, *supra*, 7 Cal.4th at p. 37.)

"A defendant may prevail in a state constitutional privacy case by negating any of the three elements [of an invasion of privacy claim] . . . or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests." (*Hill*, *supra*, 7 Cal.4th at p. 40.) "Invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest. Legitimate interests derive from the legally authorized and socially beneficial activities of government and private entities." (*Id.* at p. 38.) "Conduct alleged to be an invasion of privacy is to be evaluated based on the extent to which it furthers legitimate competing interests." (*Ibid.*)

"Only obvious invasions of interests fundamental to personal autonomy must be supported by a compelling interest." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 557.) If a privacy interest is less central, or in bona fide dispute, courts

conduct a general balancing test. (*Hill*, *supra*, 7 Cal.4th at p. 34.) Cases dealing with "freedom from involuntary sterilization or the freedom to pursue consensual familial relationships" are examples of such invasions. (*Hill*, *supra*, 7 Cal.4th at p. 34.) In all cases but one, we have applied a general balancing test. (See *Lewis*, *supra*, 3 Cal.5th at p. 573.)

By remanding the matter for further proceedings, the majority acknowledges that "surviving demurrer is no assurance of success on the merits once evidence is developed and considered." (Maj. opn., *ante*, at p. 4.) I agree. Based on the demonstrated countervailing state interest in protecting children from the harm caused by sexual exploitation over the Internet and plaintiffs' speculative contentions regarding whether the 2014 amendment furthers that interest, it is apparent that the state interest will almost certainly outweigh the alleged privacy invasion.

As a preliminary matter, "[n]o one disputes that the principal purpose of the reporting requirement — preventing the sexual exploitation and abuse of children — is a weighty one." (Maj. opn., *ante*, at p. 37.) In *People v. Stritzinger* (1983) 34 Cal.3d 505 (*Stritzinger*), we made clear that the constitutionality of the child abuse reporting exception to the psychotherapist-patient privilege and the compelling state interest in protecting children were not in question. (*Stritzinger*, at p. 513.) We recognized that a psychotherapist who reasonably suspects an incident of sexual abuse is "of course" required to report these suspicions under CANRA. (*Stritzinger*, at p. 513.) Decisions of the high court have similarly held that the state's interest in " ' "safeguarding the physical and psychological well-being of a minor" is "compelling." ' " (*Osborne*, *supra*, 495 U.S. at p. 109; see *Ferber*,

*supra*, 458 U.S. at p. 757 ["The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance"].)

Moreover, this court has already laid bare plaintiffs' conjecture that mandatory reporting of psychotherapist-patient communications will deter patients from seeking therapy. Most recently in *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 632, we explained: "To a large extent, . . . the conditions that might influence [patient] perceptions about confidentiality already exist. Psychotherapists' duty to warn about patient threats is well established in California. Indeed, despite fears that this duty would deter people from seeking treatment and irreparably damage the psychotherapist-patient relationship [citation], empirical studies have produced 'no evidence thus far that patients have been discouraged from coming to therapy, or discouraged from speaking freely once there, for fear that their confidentiality will be breached.'" (*Ibid.*; see also *People v. Wharton* (1991) 53 Cal.3d 522, 558.) Similarly, in *In re Lifschutz* (1970) 2 Cal.3d 415 (*Lifschutz*), we rejected the petitioner's claim that if the state could compel disclosure of some psychotherapeutic communications, psychotherapy could no longer be practiced successfully. We observed "that the practice of psychotherapy has grown, indeed flourished, in an environment of non-absolute privilege," and "psychotherapists certainly have been aware of the limitations of their recognized privilege for some time." (*Id.* at p. 426.) In *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, we observed that "it does not appear that our decision [in *Lifschutz*] in fact adversely affected the practice of psychotherapy in California. Counsels' forecast of harm in the present case strikes us as equally dubious." (*Tarasoff*, at p. 440,

fn. 12.)[7]  And, as discussed above, arguments based on a hypothetical future harm are not cognizable in a facial challenge.  (*T-Mobile*, *supra*, 6 Cal.5th at p. 1125.)

Furthermore, even though the task of identifying sexually exploited children online is challenging, it does not mean that Assembly Bill 1775 fails to advance its purpose, as plaintiffs assert.  In examining a similar federal statute, the Office of Legal Counsel determined that "[p]ornography may well involve 'a' specific, potentially identifiable child even if neither covered professionals nor their patients know the child's identity.  Even if covered professionals (or their patients) do not know the identity of any children depicted in pornography viewed by a patient, a report may lead authorities to specific, identifiable children.  While some child pornography may be the work of professionals and therefore difficult to link to specific identifiable children, other such images are homemade recordings, taken in domestic contexts, of sexually abusive acts 'committed against young neighbors or family members' and

---

[7]  The majority's characterization of *Stritzinger* as supporting plaintiffs' argument that mandatory reporting deters psychotherapy patients from seeking treatment (maj. opn., *ante*, at p. 38) is not well taken.  In *Stritzinger*, the therapist contacted authorities and disclosed the details of alleged abuse as related to him *by the victim.*  (*Stritzinger*, *supra*, 34 Cal.3d at p. 509.)  The therapist later disclosed the details of his conversations *with the defendant* regarding *the same abuse.*  (*Ibid.*)  The defendant challenged CANRA's reporting requirement only as applied to the second, redundant disclosure.  We did not question the propriety of an initial report of abuse under CANRA, despite concerns that even these reports could deter patients from therapy.  (*Stritzinger*, at pp. 512-514.)

therefore traceable through law enforcement investigation to a particular child or children." (*Duty to Report Suspected Child Abuse Under 42 U.S.C. § 13031* (May 29, 2012) Office of Legal Counsel, pp. 12-13 <https://www.justice.gov/sites/default/files/ olc/opinions/2012/05/31/aag-reporting-abuse_0.pdf> [as of Dec. 20, 2019].) Indeed, we have recognized that "[o]ftentimes, reporting by third parties [under CANRA] is the only way the proper authorities become aware of an incident of child abuse." (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 190.) Therefore, plaintiffs' claim — that the reporting statute does not actually serve its intended purpose because identifying children online is difficult — is unconvincing.

In addition, by asserting that, on the record before us, we cannot "evaluate . . . whether the reporting requirement serves its intended purpose" (maj. opn., *ante*, at p. 38), the majority completely ignores the direct (albeit "hands-off") harm caused by the viewing of child pornography over the Internet. (*Grant*, *supra*, 58 Cal.4th at p. 477.) Child pornography is not limited to hands-on abuse. " '[T]he "victimization" of the children . . . does not end when the pornographer's camera is put away. The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions in at least three ways. [¶] *First*, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. . . . The consumer who "merely" or "passively" receives or possesses child pornography directly contributes to this continuing victimization. [¶] *Second*, . . . [t]he recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly

victimizing these children. [¶] *Third*, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials . . . . The underlying point . . . is that there is no sense in distinguishing . . . between the producers and the consumers of child pornography. Neither could exist without the other.'" (*Grant*, *supra*, 58 Cal.4th at pp. 477-478, quoting *U.S. v. Norris* (5th Cir. 1998) 159 F.3d 926, 929-930 (*Norris*).)

As the Attorney General argues, the 2014 amendment to CANRA "reflects the accepted position that 'every viewing of child pornography is a repetition of the victim's abuse.' [Citation.] Mandated reporting of such behavior helps authorities locate and confiscate these images and stop instances of this harmful conduct." Consequently, even were it true, as plaintiffs assert, that the new reporting requirement will not reduce hands-on abuse or facilitate the rescue of exploited children, "the State's interest in protecting against the harms visited upon children when sexual images of them are downloaded, accessed, or streamed is alone sufficient to outweigh any asserted privacy interest." As the District Attorney similarly asserts, "Obviously, the reduction of persons who duplicate, print, exchange, download, access or stream child pornography, will reduce the ongoing sexual exploitation of children." That should be enough to establish that the amendment furthers the state's compelling interest in protecting children and reducing abuse. The majority's contrary view depends, not on allegations in the complaint, but on the majority's speculation that "the contribution . . . to the market for child pornography" of persons allegedly deterred by the reporting requirement from seeking treatment for their sexual

disorders "will continue unabated." (Maj. opn., *ante*, at p. 38.) Such judicial speculation should not be a basis for allowing plaintiffs to proceed with their constitutional attack on the statute.

## V. CONCLUSION

The children depicted in child pornography "are revictimized every time the content is accessed." (Bursztein et al., *Rethinking the Detection of Child Sexual Abuse Imagery on the Internet* (2019) p. 1 <https://elie.net/static/files/rethinking-the-detection-of-child-sexual-abuse-imagery-on-the-internet/

rethinking-the-detection-of-child-sexual-abuse-imagery-on-the-internet-paper.pdf> [as of Dec. 20, 2019].) The consumer who possesses or views images of child pornography online " 'directly contributes to this continuing victimization.' " (*Grant*, *supra*, 58 Cal.4th at p. 477, quoting *Norris*, *supra*, 159 F.3d at p. 930.)

The Legislature made a technical update to CANRA in order to help identify and rescue these child victims. In light of the long-standing customs and practices surrounding the mandatory reporting of the consumption of child pornography, and given the formidable rules insulating a statute from a claim of facial constitutionality, plaintiffs have not alleged a constitutional violation of privacy. I would so hold.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CHIN, J.**
**CORRIGAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Mathews v. Becerra

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted**  XXX 7 Cal.App.5th 334
**Rehearing Granted**

_____

**Opinion No.** S240156
**Date Filed:**  December 26, 2019

_____

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  Michael L. Stern


_____

**Counsel:**

Nelson Hardiman, Mark S. Hardiman and Salvatore Zimmitti for Plaintiffs and Appellants.

Arnold & Porter Kaye Scholer, Trenton H. Norris and Oscar Ramallo for Scholars as Amicus Curiae on behalf of Plaintiffs and Appellants.

Kamala D. Harris and Xavier Becerra, Attorneys General, Michael J. Mongan and Edward C. DuMont, State Solicitors General, Aimee Feinberg, Deputy State Solicitor General, Thomas S. Patterson and Douglas J. Woods, Assistant Attorneys General, Paul Stein, Marc A. LeForestier and S. Michele Inan, Deputy Attorneys General, Max Carter-Oberstone, Associate Deputy State Solicitor General, for Defendant and Respondent Xavier Becerra, as Attorney General.

Hurrell Cantrall, Thomas C. Hurrell, Melinda Cantrall and Maria Z. Markova for Defendant and Respondent Jackie Lacey, as District Attorney.

Cole Pedroza, Curtis A. Cole and Cassidy C. Davenport for California Medical Association, California Dental Association and California Hospital Association as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Mark S. Hardiman
Nelson Hardiman LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024
(310) 203-2800

Trenton H. Norris
Arnold & Porter Kay Scholer LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
(415) 471-3303

Aimee Feinberg
Deputy State Solicitor General
1300 I Street, Suite 125
Sacramento, CA 94244-2550
(916) 445-9555